Jason A. Newfield (JN-5529)
Justin C. Frankel (JF-5983)
FRANKEL & NEWFIELD, P.C.
585 Stewart Avenue, Suite 312
Garden City, New York 11530
(516) 222-1600
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
                                      :

MICHAEL CACOPERDO,               :      10 CV 7847 (RPP)

                                    :      **ECF**

               Plaintiff,      :

                                    :

   - vs. -                       :

                                    :

HARTFORD LIFE INS. CO., MLS NATIONAL  :
MEDICAL EVALUATIONS, INC. and      :
MEDICAL EVALUATION SPECIALISTS, INC. :
d/b/a/ MES SOLUTIONS.           :

                                    :

            Defendants.      :
-----------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO MOTIONS TO DISMISS

FRANKEL & NEWFIELD, P.C.
585 Stewart Avenue, Suite 312
Garden City, New York 11530
(516) 222-1600
Attorneys for Plaintiff

Of Counsel:        Jason A. Newfield (JN-5529)
                  Justin C. Frankel (JF-5983)

## TABLE OF CONTENTS

INTRODUCTION ......………………………………………………………………..…1

STATEMENT OF FACTS……………………………………………………………..2

EVIDENCE OF WRONGFUL CONDUCT
BY THIRD PARTY VENDORS……………………………………………….………3

DEFENDANT HARTFORD HAS COZY RELATIONSHIPS
WITH A NUMBER OF VENDORS………………………………………………...5

DEFENDANTS' PREEMPTION ARGUMENT LACKS MERIT………………………6

DEFENDANT HARTFORD'S SUBSTANTIVE ATTACK ON THE AMENDED
COMPLAINT DEMONSTRATES WHY THIS CONDUCT NEEDS TO BE STOPPED………9

HARTFORD'S TECHNICAL ARGUMENT FAILS…………………………………...11

THE PRINCIPAL/AGENT ARGUMENT SERVES TO PROVE HOW
BIASED THE THIRD PARY VENDORS ARE…………………………………...11

MES'REMAINING ARGUMENTS LACK MERIT……………………………………12

CONCLUSION………………………………………………………………………...14

# TABLE OF AUTHORITIES

**Page**

**Cases**

Aetna Health Inc. v. Davila
542 U.S. 200 (2004).............................................................6, 7

Barker v. Hartford Life & Acc. Ins. Co.
2007 U.S. Dist. LEXIS 55532 (N.D. Tex. 2007)..............................7

Black & Decker Disability Plan v. Nord
538 U.S. 822, 832 (2003)..........................................................1

Caplan v. CNA Fin. Corp.
544 F.Supp.2d 984, 989 (N.D. Cal. 2008).....................................5

Cleveland v. Liberty Life Assurance Company of Boston
USDC, E.D. Mich., Case No.: 2:06-cv-13780................................3, 4

Dishman v. UNUM Life Ins. Co. of Amer.
269 F.3d 974 (9th Cir. 2001).....................................................7, 8

Dubuc v. El-Magrabi
2010 Mich. App. LEXIS 1691 (Mich. Ct. App. 2010)........................13

Dubuc v. El-Magrabi
2011 Mich. LEXIS 578 (Mich. 2011)...........................................13

Erlandson v. Liberty Life Assur. Co.
320 F.Supp.2d 501, 508 (N.D. Tex. 2004).....................................7

Finley v. Hartford Life & Acc. Ins. Co.
2007 U.S. Dist. LEXIS 65591 (N.D. Cal. 2007)..............................5

Garrison v. Aetna Life Ins. Co.
558 F.Supp.2d 995, 1002 (C.D. Cal. 2008)....................................9

Hall v. MLS
2006 U.S. Dist. LEXIS 57965 (E.D. Ky. 2006)...............................3, 6

Hogan-Cross v. Met Life Ins. Co.
568 F.Supp.2d 410, 415 (S.D.N.Y. 2008).....................................1

Jacoby v. Hartford Life & Acc. Ins. Co.
2008 U.S. Dist. LEXIS 112419, * 2 (S.D.N.Y. 2008).........................5

Kalish v. Liberty Mutual,
419 F.3d 501, 507-08 (6th Cir. 2005)……………………………………………………2

Koch v. Mutual of Enumclaw Ins. Co.
108 Wash. App. 500 (Wash. App. 2001)………………………………...………12

Leporace v. Mechanick, 2010 Pa. Dist. & Cnty. Dec.
LEXIS 507 (Pa. Common Pleas Court 2010)…………………………………………13

Marks v. Smith
65 A.D.3d 911, 916 (1st Dep't 2009)………………………………………………12

Nu-Life Const. Corp. v. Bd. of Educ. of City of New York
204 A.D.2d 106, 107 (1st Dep't 1994)……………………………………...……12

Patricia White v. Prudential
10-cv-1855 (N.D. Cal.)………………………………………………………………9

Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.
399 F.3d 692, 698 (6th Cir. 2005)……………………………………………......6

Pilot Life Ins. Co. v Dedeaux
481 U.S. 41 (1987)…………………………………………………………………8

Powell v. Hartford Fin. Serv. Group, Inc.
2007 U.S. Dist. LEXIS 17311 (W.D. Ky 2007)……………………………………5

Pugh v. Westreich
2005 Minn.App. LEXIS 7 (2005)………………………………………………10, 12

Rabuck v. Hartford Life & Acc. Ins. Co.
522 F.Supp.2d 844 (W.D. Mich. 2007)……………………………………………...5

Siemionko v. Bldg. Serv. 32B-J Pension Fund
2009 U.S. Dist. LEXIS 92131 (E.D.N.Y. 2009)……………………………………7

Willner v. Town of N. Hempstead
977 F.Supp. 182, 192 (E.D.N.Y. 1997)……………………………………………10

Wright v. Raytheon Co. STD Plan
2008 U.S. Dist. LEXIS 81951 (D. Az. 2008)………………………………………5

**Statutes, Rules, and Regulations**

29 U.S.C. § 1144(a) ………………………………………………………..……..5

## INTRODUCTION

Plaintiff MICHAEL CACOPERDO, ("Cacoperdo") respectfully submits this omnibus memorandum of law in opposition to the motions to dismiss filed by Defendants HARTFORD LIFE INSURANCE COMPANY ("Hartford"), MLS NATIONAL MEDICAL EVALUATIONS, INC. ("MLS"), and MEDICAL EVALUATION SPECIALISTS, INC. d/b/a MES SOLUTIONS ("MES"). These defendants have moved to dismiss the non-ERISA causes of action that were brought by way of an Amended Complaint, filed with the Court on March 10, 2011.

Plaintiff has sought relief against the above third party vendors, who provide services to insurance companies in general, and Defendant Hartford specifically.  The dirty secret of the entire ERISA disability landscape involves the purported "independence" of the third party vendors and the doctors that they recruit and hire to provide opinions to insurance companies, which are utilized to justify the denial or termination of legitimate claims.  The two vendor defendants are several of the most widespread offenders in the industry.

While some courts have continued to believe the insurance companies' spin that these vendors and the hired doctors are independent, many courts have come to appreciate the unmitigated bias which exists in this multi-million dollar a year industry.  In fact, as noted initially by the United States Supreme Court in *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003) "[p]hysicians repeatedly retained by benefits plans may have an incentive to make a finding of "not disabled" in order to save their employers' money and preserve their own consulting arrangements." Judge Kaplan, in *Hogan-Cross v. Met Life Ins. Co.*, 568 F.Supp.2d 410, 415 (S.D.N.Y. 2008), made a similar observation, noting "[a] consultant may be compensated in a manner and/or to an extent that creates a motive to recommend against the payment of benefits because such recommendations

are believed to serve the interests of the plan administrator."[1]

Thus, it is apparent that some courts have appreciated how these vendors may be economically driven to influence the ERISA disability claim process through their own financial arrangements. The issue before the Court through Defendants' motions is whether Plaintiff here has any recourse against these economically driven third party vendors whose report influenced the termination of Plaintiff's claim.

To the extent that the Amended Complaint is somehow inartfully drafted, Plaintiff would respectfully request leave to file a further Amended Complaint to cure any insufficiencies which might exist.

## STATEMENT OF FACTS

Plaintiff Michael Cacoperdo was an employee of Stop & Shop, who was entitled to long term disability insurance coverage through his employment. The Amended Complaint alleges that Cacoperdo became disabled in February 2005, and that he was paid benefits under the claim until January 26, 2010. Cacoperdo became disabled due to back and neck herniations and degenerative disc disease. The Amended Complaint further alleges that Cacoperdo remains disabled but that his benefits were wrongfully terminated by Defendant Hartford. Cacoperdo has also been awarded Social Security Disability benefits coinciding with his last day worked. The claim file reflects that Defendant obtained a medical opinion from Dr. Philip Marion, through an entity called RRS during the course of the claim.[2] That review found Cacoperdo to be totally incapacitated regarding routine

---

[1]       *Kalish v. Liberty Mutual*, 419 F.3d 501, 507-08 (6th Cir. 2005).

[2]       This report is attached to the Declaration of Jason Newfield as Exhibit "A".

2

occupational activities.  Defendant Hartford never sought a further opinion from either RRS or Dr. Marion in connection with this claim[3], but, rather, found other vendors and preferred doctors to render impairment opinions.

Significant to the instant motion, Cacoperdo alleges that Defendants MES and MLS knew or should have known of the existence of the contract between Cacoperdo and Defendant Hartford. (Complaint, ¶¶ 47,54).  Cacoperdo further alleges that both MLS and MES intentionally induced Defendant Hartford to breach its contract with Cacoperdo by providing the reports which Defendant Hartford would utilize to support or justify a claim termination.  (Complaint, ¶¶ 48,55).  Finally, Cacoperdo alleges that Hartford breached the terms of the policy.  (Complaint, ¶¶ 25,27)(incorporated by reference into Second and Third Causes of Action).


## EVIDENCE OF WRONGFUL CONDUCT BY THIRD PARTY VENDORS

There is evidence that third party vendors like MES and MLS have engaged in wrongful conduct with respect to ERISA disability claimants.  There is specific evidence against MLS, which was addressed in *Hall v. MLS*, 2006 U.S. Dist. LEXIS 57965 (E.D. Ky. 2006).  There, the allegations involved an alteration of a report from an independent medical examination, which served to impact upon Hall's eligibility for continued disability benefits.  A Declaration submitted in the *Hall* case demonstrates that this conduct is not an isolated occurrence.  Robert Rosati, Esq., a California attorney, submitted a declaration in the *Hall* case which references another ERISA disability litigation, entitled *Cleveland v. Liberty Life Assurance Company of Boston*, from the United States

---

[3]        At the Initial Conference, this issue was raised to Your Honor, and counsel for Defendant Hartford had no explanation for why Dr. Marion was not again utilized to consider the claim.

3

District Court, Eastern District of Michigan, Case No.: 2:06-cv-13780.[4]  Mr. Rosati declares that the report which MLS produced to Liberty in the *Cleveland* action was materially different than the report which was produced by the reviewing doctor at issue, Dr. Robert Weiner.   Unfortunately, because of the heretofore tightly restricted scope of discovery in ERISA disability cases, more examples of this type of conduct have not been readily developed.

However, Hartford was involved in another instance with an altered report, although as best as could be developed, the wrongful conduct occurred by its vendor, RRS.  In that situation, which occurred in *Testa v. Hartford Life*, a report from Dr. Michael Farber contained language suggesting that an IME would prove useful in the case.  The report went through certain "quality assurance" channels, and interestingly, the final report which was sent to Hartford did not contain this material.[56] Thus, another instance of a third party vendor acting illegally, only revealed through dogged pursuit of third party discovery in an ERISA disability case.

---

[4]      The Declaration of Robert Rosati, Esq., is attached to the Declaration of Jason Newfield as Exhibit "B".

[5]      Plaintiff's counsel here was counsel for Testa, and secured the unaltered report through a subpoena upon RRS.  The unaltered report was not within the administrative record that Hartford produced.  The two reports, the unaltered report and the report RRS provided to Hartford, are attached to the Declaration of Jason Newfield as Exhibit "C".

It is interesting that counsel for MES would chastise Plaintiff for "maneuvering" in light of the decision in *Testa*.  What is interesting is that the lesson learned from Testa is that third party vendors engage in illegal activities and the cover needs to be pulled back from where they hide.

[6]      In the case at bar, MLS provided Hartford an update advising that the report was proceeding to the QA (Quality Assurance) stage for review and "clarification".  At this point, one can only speculate what if anything occurred during the QA phase of the process.   This email is attached to the Declaration of Jason Newfield as Exhibit "D".

4

## DEFENDANT HARTFORD HAS COZY RELATIONSHIPS WITH
## A NUMBER OF VENDORS

Numerous courts have determined that Hartford maintains significant financial relationships with third party vendors in the ERISA disability arena. *See Rabuck v. Hartford Life & Acc. Ins. Co.*, 522 F.Supp.2d 844 (W.D. Mich. 2007)(noting that nothing in the record supported the assertion that University Disability Consortium ("UDC") was independent).   Hartford's relationship with UDC has been noted in numerous federal court decisions, including *Caplan v. CNA Fin. Corp.*, 544 F.Supp.2d 984, 989  (N.D. Cal. 2008); *Jacoby v. Hartford Life & Acc. Ins. Co.*, 2008 U.S. Dist. LEXIS 112419, * 2 (S.D.N.Y. 2008);  *Powell v. Hartford Fin. Serv. Group, Inc.*, 2007 U.S. Dist. LEXIS 17311 (W.D. Ky 2007);  *Finley v. Hartford Life & Acc. Ins. Co.*, 2007 U.S. Dist. LEXIS 65591 (N.D. Cal. 2007).   Hartford also regularly employs Defendants MLS and MES, along with RRS, MAG and others in its ERISA LTD business.

Other courts have noted the close relationship between insurer and third party vendor, noting how both companies stood to benefit from the denial of claims. *Wright v. Raytheon Co. STD Plan*, 2008 U.S. Dist. LEXIS 81951 (D. Az. 2008)(citing to *Caplan* and discussing how Hartford paid more than 13 million dollars to UDC from 2002, and noting that Hartford knows UDC has an incentive to provide it with reports that will increase the changes that Hartford will return to UDC in the future, based upon reports that Hartford may rely upon in justifying its decision to deny benefits.).  Plaintiff's allegations of a symbiotic relationship is derived from the findings developed by the numerous cases cited above.  It is beyond dispute that these vendors derive the majority of their income from these various insurance companies, and it is also without serious dispute that the incentive for these companies to engage in untoward conduct is paramount.

## DEFENDANTS' PREEMPTION ARGUMENT LACKS MERIT

Defendant Hartford has asserted that the causes of action against the third party vendors must be dismissed as they are "preempted" by ERISA. Defendant Hartford asserts that ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). However, ERISA does not preempt "traditional state-based laws of general applicability that do not implicate the relations among the traditional ERISA plan entities" nor does it preempt state-law claims brought against a non-ERISA entity merely because that entity provided service to an ERISA-governed plan. *See Hall v. MLS*, 2006 U.S. Dist. LEXIS 57965, at * 5; citing to *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 698 (6th Cir. 2005).

As noted by the Court in *Hall*, the defendants were not among the traditional plan entities, as they did not exercise management, authority, or control over the Plan or its assets. The Court thus held that the claim against the non-plan defendants, was not preempted by ERISA. The Court went on to also state that although "a plaintiff might have a claim under ERISA against an ERISA entity does not preclude him from bringing state law claims against a non-ERISA entity. *Hall*, at *7.

Defendant Hartford urges that Plaintiff is simply attempting an end-run around ERISA's remedial statute. This is simply untrue. Plaintiff is seeking compensatory damages against Defendants who caused Defendant Hartford to breach its obligations to Plaintiff, by providing a report which would cause Defendant Hartford to terminate his claim. As alleged in the Amended Complaint, these Defendants knew or should have known about the existence of Plaintiff's contract with Defendant Hartford, and their actions were the proximate cause of Hartford terminating Plaintiff's claim. Trying to further its argument, Defendant Hartford seeks to rely upon *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004). That decision does not apply here. There, the plaintiff sought

6

tort relief against the actual ERISA fiduciaries, and preemption was properly applied.  The Court correctly held that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."  *Id.* at 209.  Because the plaintiff had only complained about denials of coverage under the terms of the ERISA plan (as opposed to seeking relief from non-fiduciary tortfeasors), the Court properly held that the claims were preempted.  In contrast, Plaintiff does not bring causes of action that duplicate, or supplant the ERISA enforcement remedies and thus, the action is not pre-empted.

An example should serve to illuminate why Defendants' argument lacks merit.  Had Plaintiff sued Defendant Hartford for emotional distress arising out of the breach of the plan[7], or sought separate relief grounded upon a violation of the covenant of good faith and fair dealing resulting from the claim handling and claim termination, such claims might fall within the preemption that *Davila* addresses.  *See e.g.*, *Siemionko v. Bldg. Serv. 32B-J Pension Fund*, 2009 U.S. Dist. LEXIS 92131 (E.D.N.Y. 2009).  However, as the Ninth Circuit has stated, in *Dishman v. UNUM Life Ins. Co. of Amer.*, 269 F.3d 974 (9th Cir. 2001), liability against an administrator can be imputed onto an insurer in an ERISA disability action, where the other entity that it engaged was involved in tortious conduct.  *See also Erlandson v. Liberty Life Assur. Co.*, 320 F.Supp.2d 501, 508 (N.D. Tex. 2004). The Amended Complaint here is much more akin to the claims brought in *Dishman* (albeit the claims are directly against the third party vendors), than it is to the claims brought in *Davila*.  The non-

---

[7]     *Barker v. Hartford Life & Acc. Ins. Co.*, 2007 U.S. Dist. LEXIS 55532 (N.D. Tex. 2007) addressed a claim for Intentional Infliction of Emotional Distress, and held that preemption did not apply to the claim, despite the fact that the predicate for the claim was the handling of the ERISA disability claim by the fiduciary itself.

ERISA claims brought here do not speak to improper processing of Plaintiff's benefits claim, but, rather, speak to a scheme that involves the third party vendor Defendants providing result oriented reports to Defendant Hartford as a business practice, in order to continue securing millions of dollars in annual revenues.  The conduct of these third party vendors, as alleged, caused Defendant Hartford to breach its contractual obligations to Plaintiff.

*Dishman* also serves to dispense with Defendant Hartford's argument that the conduct at issue "relates" to the plan, for which Defendant Hartford relies upon *Pilot Life Ins. Co. v Dedeaux*, 481 U.S. 41 (1987).  The Ninth Circuit in *Dishman* addressed the argument, acknowledging as it had to that at some level, the conduct related to the plan, but noting that the Supreme Court had admonished courts to eschew "uncritical literalism", and instead to look at the conduct at issue. Providing a further example of how defendant's argument lacked validity, the Court asked about the result had the investigators in *Dishman* rear-ended Dishman's car while surveilling him.

The same analogous line of reasoning could be applied here.  What if instead of simply conducting a paper review of the medical records, the third party vendors' doctor had performed an examination of Plaintiff, and caused him significant personal injury during the course of the examination?  Under Defendants' theory, that claim would also be preempted, as it related to the administration of Plaintiff's claim for benefits.  However, preemption should properly not be applied, as there was conduct that caused injury or damages that occurred, despite being "related" to the administration of the plan or the claim for benefits.

8

## DEFENDANT HARTFORD'S SUBSTANTIVE ATTACK ON THE AMENDED COMPLAINT DEMONSTRATES WHY THIS CONDUCT NEEDS TO BE STOPPED

Defendant Hartford claims that the Amended Complaint is generally incomprehensible, and that the theory of liability is less than clear. What is clear is that the third party vendor defendants, MLS and MES, have full knowledge that the claims which are sent by Defendant Hartford for review, and particularly in this case, Plaintiff's claim, relates to an LTD plan. To claim that these vendors do not have actual knowledge of the existence of the plan is at best insulting, but more likely simply disingenuous, since with the volume of work that these vendors do annually, not just for Defendant Hartford, but for many insurers, and with the propaganda they place on their marketing materials, it would be impossible to legitimately deny that these Defendants lack knowledge of the existence of the contract.[8]

Defendant Hartford also claims, without any legal authority, that Plaintiff is not a party, nor in privity to the contract at issue. Sweeping assertions seem to carry the bulk of Defendant Hartford's arguments, however, such unsupported assertions cannot support dismissal of Plaintiff's Amended Complaint. Contrary to Defendant Hartford's assertion, paragraph "27" of the Amended Complaint alleges the breach of the policy. That paragraph has been incorporated by reference into

---

[8]     In *Garrison v. Aetna Life Ins. Co.*, 558 F.Supp.2d 995, 1002 (C.D. Cal. 2008), it was revealed that MES preformed 1020 medical reviews for Aetna alone in 2007 (approximately 85 per month). It was also revealed that MES performs reviews for not only Aetna, but Hartford, Prudential, Met Life and CIGNA. These vendors cannot be heard to argue that they lack knowledge of the existence of a contract involving the claimant and the insurer.

        MLS also secures significant revenues from providing these types of reviews to insurance companies. A declaration from Lawrence Padway, Esq., in an action entitled *Patricia White v. Prudential*, 10-cv-1855 (N.D. Cal.) demonstrates that MLS has earned over close to 5 Million ($ 5,000,000) Dollars with Prudential since 2007. This declaration is attached to the Declaration of Jason Newfield as Exhibit "E".

9

the Second and Third Causes of Action.  Several additional paragraphs (which must be accepted as true on this Motion to Dismiss) allege that both MLS and MES knew or should have known of the existence of the contract.

Defendant Hartford cites to *Pugh v. Westreich*, 2005 Minn. App. LEXIS 7 (2005), an unpublished decision which may not be cited except as provided by Minnesota statutes, claiming that case is "almost identical" to the instant case.  This is another disingenuous argument, as that case is radically different from the instant case.  There, an actual examination occurred, which was apparently mandated by statute, and the examination was in conformity with statutory and contractual requirements.  Here, no examination occurred; rather it was a paper review, that is not governed by any statute in particular.  Here, Defendant Hartford utilized two of its cozy relationship vendors to procure reports to support a termination of benefits, knowing that the vendors would secure medical opinions that would be utilized to support a claim termination.

Another vacuous argument presented by Defendant Hartford centers around the purported defense of "qualified privilege" or "qualified immunity".  Defendant Hartford apparently casts both MES and MLS into the realm of government actors or possessing judicial or quasi-judicial authority.  Its reliance upon *Willner v. Town of N. Hempstead*, 977 F.Supp. 182, 192 (E.D.N.Y. 1997) erroneously incorporates that position.  There simply is no way Defendant Hartford can cast MES and MLS as entitled to a privilege or an immunity, whether absolute or qualified.

It is respectfully submitted that Defendants' motions to dismiss should be denied.

10

## HARTFORD'S TECHNICAL ARGUMENT FAILS

Lastly, Defendant Hartford asserts that the Amended Complaint should be dismissed on the basis that Plaintiff was not granted leave of Court or obtain consent from Defendant to file its Amended Complaint.  Plaintiff complied with the terms of Your Honor's February 10, 2011 Scheduling Order, by filing the Amended Complaint prior to March 15, 2011.

It is Defendant Hartford's position that by failing to obtain leave of Court or consent from Defendant, the Amended Complaint must be dismissed.  The Order from the Court, dated February 10, 2011, states as follows: "Amend the pleadings by 3/15/11." *See* Document 10, Filed 01/10/11.

As courts prefer to decide cases on substance rather than form, it is a poor argument to seek dismissal upon this position.   Plaintiff sought to file the Amended Complaint in good faith and timely within the context of the Court's Order.  Thus, if necessary, Plaintiff seeks an Order granting it permission *nunc pro tunc* to file the Amended Complaint.


## THE PRINCIPAL/AGENT ARGUMENT SERVES TO PROVE
## HOW BIASED THE THIRD PARTY VENDORS ARE

Defendant MES has asserted that the Amended Complaint cannot succeed, on the grounds that an agent cannot be held liable for inducing his principal to breach a contract, at least to the extent that he or she is acting on behalf of his principal and within the scope of his authority.  This argument underscores the fact that the third party vendors, in general, and MES and MLS here, in particular, are serving at the behest of Defendant Hartford, and are acting in concert with Defendant Hartford and are anything but "independent" as has been championed.  MES cannot argue that they are independent on the one hand, and yet, are acting as an agent for its principal (Hartford) on the

11

other hand. The cases cited by Defendant MES concerning the agent-principal relationship are not analogous situations to the case at bar. In *Nu-Life Const. Corp. v. Bd. of Educ. of City of New York*, 204 A.D.2d 106, 107 (1st Dep't 1994), the action was dismissed on summary judgment (rather than a motion to dismiss), as the plaintiff was determined to be unable to produce evidence (as opposed to properly alleging) that the defendant was acting as other than an agent of the Board. The defendant at issue was actually a Board member, in contrast to here, where MES and MLS are third party vendors. This argument may have held more weight if the defendant at issue was the claim representative involved in the decision to terminate the claim, where one can readily determine that such individual was Hartford's agent.

Similarly, Defendant MES erroneously relies upon *Marks v. Smith*, 65 A.D.3d 911, 916 (1st Dep't 2009) in support of this agent/principal argument. There, the individual defendants were employed by the defendant university, and were acting within the scope of their employment. In contrast, Defendants MES and MLS are not Hartford employees (although we do claim they are acting in concert with Defendant Hartford). Thus, the holdings from the above cited cases have no impact upon the issues before the Court.

## MES' REMAINING ARGUMENTS LACK MERIT

Defendant MES also cites cases from other jurisdictions seeking to support a theory that courts have "routinely" dismissed complaints. In fact, Defendant MES cites a total of four (4) cases.[9] *Koch v. Mutual of Enumclaw Ins. Co.* 108 Wash. App. 500 (Wash. App. 2001) had a different procedural posture than the instant case, as it was decided upon summary judgment, rather than a

---

[9]      *Pugh v. Westreich* was discussed *infra*.

12

motion to dismiss. The Court determined that plaintiff was unable to show that the alleged tortfeasor acted dishonestly or in bad faith. It may be that upon summary judgment, the Court here determines that plaintiff fails to meet its burden, but upon a motion to dismiss, it is premature to render such a conclusion.

Defendant MES also cites to *Dubuc v. El-Magrabi*, 2010 Mich. App. LEXIS 1691 (Mich. Ct. App. 2010), another unpublished decision, decided on summary disposition, following discovery. What is most interesting is that *Dubuc* was **REVERSED** on appeal, with the Michigan Supreme Court stating that "[w]hen the complaint allegations are viewed in a light most favorable to the plaintiff, she did allege an unjustified instigation of the breach by the defendants." *Dubuc*, 2011 Mich. LEXIS 578 (Mich. 2011).

Lastly, Defendant MES cites to *Leporace v. Mechanick*, 2010 Pa. Dist. & Cnty. Dec. LEXIS 507 (Pa. Common Pleas Court 2010), a case that was primarily presented upon a claim for defamation. The entirety of this court's discussion involved the defamation claim, and no discussion is offered concerning a tortious interference claim, other than to note that the tortious interference claim survived the motion to dismiss equivalent, only to be dismissed upon summary judgment. Thus, it is clear that courts have NOT "routinely dismissed" complaints at this stage of the proceedings, but, rather, in the few instances cited, dismissals occurred following discovery and at the summary adjudication phase.

## CONCLUSION

As articulated above, the motions to dismiss should be denied in their entirety.

Dated: Garden City, New York
       May 27, 2011

                                        Respectfully submitted,

                                        FRANKEL & NEWFIELD, P.C.
                                        Jason Newfield (JN5529)
                                        Attorneys for Plaintiff
                                        Frankel & Newfield, P.C.
                                        585 Stewart Avenue, Suite 312
                                        Garden City, New York 11530

14