UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

MICHAEL CACOPERDO,

                        Plaintiff,          Civil Action No.: 10-civ-7847 (RPP)

       – against –

HARTFORD LIFE INSURANCE COMPANY,
MLS National Medical Evaluations, Inc. and Medical    DOCUMENT
Evaluation Specialists, Inc. d/b/a MES Solutions,       ELECTRONICALLY FILED

                        Defendants.

-----------------------------------------------------------------------X

# DEFENDANT HARTFORD LIFE INSURANCE COMPANY'S
# REPLY MEMORANDUM OF LAW IN SUPPORT OF
# MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

                               SEDGWICK, LLP
                               ***Attorneys for Defendant***
                               HARTFORD LIFE INSURANCE COMPANY.
                               125 Broad Street, 39th Floor
                               New York, New York 10004
                               Telephone: (212) 422-0202
                               Facsimile: (212) 422-0925
                               [Sedgwick File No. 02489-000101]

Michael H. Bernstein
John T. Seybert
Daniel M. Meier
   *Of counsel*

NY/702384v1

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................1

ARGUMENT .................................................................................................................................1

    POINT I

    THE SECOND AND THIRD COUNTS OF PLAINTIFF'S
    AMENDED COMPLAINT MUST BE DISMISSED ......................................................1

        A.    CACOPERDO IS NOT ENTITLED TO RELIEF UNDER
             ERISA §502(A)(3) AGAINST A NON-FIDUCIARY,
             PURSUANT TO *MERTENS* .................................................................................1

        B.    CACOPERDO'S CAUSES OF ACTION AGAINST MES
             AND MLS ARE PREEMPTED BY ERISA ........................................................2

        C.    CACOPERDO'S FOCUS ON HARTFORD'S PURPORTED
             FINANCIAL RELATIONSHIP WITH MLS AND MES IS A
             RED HERRING.....................................................................................................5

        D.    CACOPERDO'S FAILURE TO PLEAD THE ELEMENTS
             OF TORTIOUS INTERFERENCE IS GROUNDS FOR
             DISMISSAL............................................................................................................8

    POINT II

    PLAINTIFF'S AMENDED COMPLAINT SHOULD BE STRICKEN
    AS IMPROPERLY FILED ................................................................................................9

        A.    PLAINTIFF MAY NOT AMEND HIS COMPLAINT
             WITHOUT LEAVE OF COURT ..........................................................................9

CONCLUSION............................................................................................................................10

CERTIFICATE OF SERVICE ..................................................................................................11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*AA Tube Testing Co.* v. *Sohne*,
  20 A.D.2d 639, 246 N.Y.S.2d 247 (2d Dep't 1964) .................................................................8

*Aetna Health Inc.* v. *Davila*,
  542 U.S. 200 (2004) ............................................................................................................ 5, 9

*Black & Decker* v. *Nord*,
  538 U.S. 822 (2003) ...............................................................................................................5

*Burns Jackson Miller Summit & Spitzer* v. *Lindner*,
  88 A.D.2d 50, 452 N.Y.S.2d 80 (2d Dep't 1982) ...................................................................8

*Cicio* v. *Does*,
  208 F. Supp. 2d 288 (E.D.N.Y. 2001), *aff'd* on these grounds 321 F.3d 83 (2d Cir. 2003) ....................... 3, 9

*Dishman* v. *UNUM Life Insurance Co.*,
  269 F.3d 974 (9th Cir. 2001) ..................................................................................................4

*Gerosa* v. *Savasta & Co.*,
  329 F.3d 317 (2d Cir. 2003) ...................................................................................................2

*Great-West Life & Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2002) ...............................................................................................................2

*Hall* v. *MLS National Medical Evaluations*,
  No. 05-185-JBC, 2006 WL 2367139 (E.D. Ky. Aug. 15, 2006) ................................ 3, 4, 6, 7

*Hobson* v. *Metropolitan Life Ins. Co.*,
  574 F.3d 75 (2d Cir. 2009) .....................................................................................................6

*Kalimian* v. *Liberty Mutual Fire Ins. Co.*,
  300 F.2d 547 (2d Cir. 1962) ...................................................................................................7

*Lowe v. McDonald*,
  221 F.2d 228 (9th Cir. 1955) ..................................................................................................7

*Mertens v. Hewitt Assoc.*,
  508 U.S. 248, 113 S.Ct. 2063 (1993) ........................................................................... 1, 2, 5, 9

*Mugan* v. *Hartford Life Group Ins. Co.*,
  No. 09cv6711, 2011 WL 291851 (S.D.N.Y. Jan. 20, 2011) ...................................................6

NY/702384v1

*Pugh* v. *Westreich*,
   No. A04-657, 2005 WL 14922 (Minn. Ct. App. Jan 4, 2005)..................................................9

*Rizzi* v. *Hartford Life and Accident Ins. Co.*,
   No. 09-cv-2107, 2010 WL 2473858 (10th Cir. June 18, 2010).............................................6

*Romney* v. *Lin*,
   94 F.3d 74 (2d Cir. 1996).......................................................................................................3

*Sovereign Business Forms, Inc.* v. *Stenrite Indus. Inc.*,
   No. 00CIV3867, 2000 WL 1772599 (S.D.N.Y. Nov. 28, 2000) ...........................................8

*Testa* v. *Hartford Life Ins. Co.*,
   No. 08-CV-816, 2011 WL 795055 (E.D.N.Y. March 1, 2011) ......................................... 6, 7

*World Wide Communications, Inc.* v. *Rozar*,
   No. 96Civ.1056, 1997 WL 795750 (S.D.N.Y. Dec. 30, 1997)..............................................8

**Statutes**

29 C.F.R. § 2560.503-1(h)(3)(iii) ......................................................................................................4

Employee Retirement and Income Security Act of 1974 ("ERISA"),
   29 U.S.C. §1001, *et seq.*........................................................................................................1

ERISA § 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B) ...........................................................................9

ERISA § 514(a), 29 U.S.C. § 1144(a) ..............................................................................................3

ERISA §502(a)(3), 29 U.S.C. §1132(a)(3)................................................................................... 1, 2

**Rules**

Fed. R. Civ. P. 12 ..............................................................................................................................1

Fed. R. Civ. P. 15 ....................................................................................................................... 1, 10

NY/702384v1

**PRELIMINARY STATEMENT**

Defendant, Hartford Life Insurance Company ("Hartford"), respectfully submits this Reply Memorandum of Law in support of its motion pursuant to Rule 15(a) and 12(b)(6), FED. R. CIV. P., for an order dismissing plaintiff Michael Cacoperdo's ("Cacoperdo") Amended Complaint for failure to obtain leave to amend before filing this pleading and for failure to state a cause of action for which relief can be granted.

**ARGUMENT**

**POINT I**

**THE SECOND AND THIRD COUNTS OF
PLAINTIFF'S AMENDED COMPLAINT MUST BE DISMISSED**

**A.    CACOPERDO IS NOT ENTITLED TO RELIEF UNDER ERISA §502 (A)(3) AGAINST A NON-FIDUCIARY, PURSUANT TO *MERTENS***

Cacoperdo's conspicuous failure to address the Supreme Court's rulings in *Mertens* v. *Hewitt Assoc.*, 508 U.S. 248, 253, 113 S.Ct. 2063, 2067 (1993) is remarkable considering that this decision addresses the specific subject raised by this motion; *i.e.,* whether a non-fiduciary may be held liable under the Employee Retirement and Income Security Act of 1974, 29 U.S.C. §1001, *et seq.* ("ERISA") for aiding and abetting an alleged breach of fiduciary duty by an ERISA plan fiduciary.  This is particularly so because Hartford alerted Cacoperdo to the applicability of this case in its letter, dated March 15, 2011 (*see* Declaration of Michael H. Bernstein dated June 20, 2011, Ex. "A"), as well as in its moving brief (MOL at 11-16).[1] Specifically, in both its letter and MOL, Hartford explained that Cacoperdo's claims for continuing long-term disability ("LTD") benefits were not actionable as against non-fiduciaries, Medical Evaluation Specialists, Inc. d/b/a MES Solutions ("MES") and MLS National Medical Evaluations, Inc. ("MLS"), under the group long-term disability plan for The Stop & Shop Supermarket Co.'s ("Stop & Shop") employees (the "Plan"), and pursuant to *Mertens,* should be withdrawn.  Instead of responding to this clear point of law, Cacoperdo's opposition attempts to misdirect the Court by drawing analogies to unrelated

---

[1] "MOL" refers to Hartford's Memorandum of Law in Support of Motion To Dismiss Plaintiff's Amended Complaint dated April 18, 2011, Doc. No. 22.  "Opp." refers to Cacoperdo's Memorandum of Law In Opposition to Motions to Dismiss dated May 27, 2011, Doc. No. 38.

1

cases, as discussed in more detail below. However, Cacoperdo's failure to address and distinguish *Mertens* and explain how MES and MLS can somehow be held liable under ERISA as non-fiduciaries, is sufficient grounds for dismissal of the Amended Complaint.

The Supreme Court has repeatedly recognized that ERISA's "carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Great-West Life & Annuity Ins. Co.* v. *Knudson*, 534 U.S. 204, 209 (2002) (quoting *Mertens*, 508 U.S. at 254). Indeed, *Mertens* answers the specific question raised by Plaintiff's Amended Complaint, which is "whether ERISA authorizes suits for money damages against nonfiduciaries who knowingly participate in a fiduciary's breach of fiduciary duty." *Mertens*, 508 U.S. at 251. The court held that ERISA does not permit such suits. *Id.* The court further concluded that ". . . ERISA has eliminated . . . the common law's joint and several liability, for all direct and consequential damages suffered by the plan, on the part of persons who had no real power to control what the plan did" — that is, nonfiduciaries. *Id.*, at 262.

Similarly, the Second Circuit has held that ERISA §502(a)(3), 29 U.S.C. §1132(a)(3) does not allow for claims alleging knowing participation in a breach of fiduciary duty by a non-fiduciary where the claimant seeks monetary damages. *See Gerosa* v. *Savasta & Co.*, 329 F.3d 317, 322 (2d Cir. 2003) (acknowledging that "non-fiduciaries who knowingly participate in a fiduciary breach cannot be liable for ordinary damages"). Here, the Amended Complaint seeks monetary relief from MES and MLS, third party vendors who provided services and information to Hartford, that did not act in a fiduciary capacity and thus cannot be held liable under ERISA for allegedly assisting in an alleged breach of fiduciary duty by Hartford. Therefore, Cacoperdo's causes of action against MES and MLS should be dismissed.

**B. CACOPERDO'S CAUSES OF ACTION AGAINST MES AND MLS ARE PREEMPTED BY ERISA**

Aside from avoiding the fact that his proposed causes of action against non-fiduciaries are improper under *Mertens*, Cacoperdo also ignores the fact that claims seeking to enforce rights to benefits under ERISA plans may only be brought pursuant to ERISA §502(a), 29 U.S.C. §1132(a). *See Cicio* v. *Does*,

2

208 F. Supp. 2d 288 (E.D.N.Y. 2001), *aff'd* on these grounds 321 F.3d 83 (2d Cir. 2003); *Romney* v. *Lin*, 94 F.3d 74, 77 (2d Cir. 1996). Indeed, ERISA completely preempts any and all state law claims that "relate to" the administration of an employee welfare benefit plan. ERISA § 514(a), 29 U.S.C. § 1144(a).

In opposition to Hartford's motion to dismiss, Cacoperdo argues that his claims are not preempted ERISA and uses fact-intensive cases to support this wrong-headed argument. (Opp. at 6-8). For example, Cacoperdo relies heavily on *Hall* v. *MLS National Medical Evaluations*, No. 05-185-JBC, 2006 WL 2367139 (E.D. Ky. Aug. 15, 2006) to argue that his so-called "state claims" are not preempted by ERISA. (Opp. at 6). Although *Hall* did involve a claim against a third party vendor, critical to the court's decision in that case was the fact that plaintiff's claims did not "implicate" any of the Plan entities. *Hall*, 2006 WL 2367139, at *1-2. Here, unlike in *Hall*, Cacoperdo alleges that MES and MLS were complicit in Hartford's alleged wrongdoing. (Cacoperdo's Amended Complaint dated March 8, 2011 ("Complaint"), ¶ 35). Although Cacoperdo has brought the tortious interference claim against the alleged agents of Hartford – the ERISA-claim fiduciary – the gravamen of his claim is that these parties conspired with Hartford to support its denial of his benefit claim. Thus, *Hall* is inapposite.

In fact, the District Court in *Hall* stated that the case was distinguishable from other ERISA cases because those cases "deal with benefits owed under the terms of an ERISA plan," while the plaintiff in *Hall* did not "seek redress for the wrongful denial of benefits under the terms of the Plan." *Hall*, 2006 WL 2367139, at *2. In contrast, Cacoperdo's Amended Complaint expressly seeks benefits owed under the terms of the Plan from MES and MLS, since the Amended Complaint seeks as damages, "the amount of disability insurance benefits that Plaintiff would have been entitled to, plus additional damages." (Complaint, Wherefore clause, ¶¶ g, h). Moreover, the District Court in *Hall* court emphasized that the plaintiff was not seeking redress for the wrongful denial of benefits under the terms of the Plan, but was instead alleging that the defendants transmitted fraudulent information to the insurer. *Hall*, 2006 WL 2367139, at *2. Here, Cacoperdo can not and does not assert that MES and MLS breached any independent duty because these parties' only actions were to properly assist Hartford in retaining independent physician consultants to perform peer reviews of the medical information Cacoperdo had

3

submitted.  Thus, neither MLS nor MES owed Cacoperdo any independent legal duty.  While Cacoperdo attempts to avoid the inevitable conclusion that his claims relate to an employee benefit plan, even the District Court in *Hall* would have found his claims to be preempted by ERISA.

Cacoperdo argues that MES and MLS's conduct must be examined to determine whether it actually relates to Plan administration or if it only has a tenuous relationship with the Plan, which somehow caused injury or damages to occur.  (Opp. at 8).  However, this argument relies upon the assumption that the conduct at issue was not directly related to the Plan or its administration, which is false.  Specifically, Cacoperdo relies on cases from other Circuits that are distinguishable because, unlike the facts of this case, these cases all involved claims peripheral to the administration of the plan.  Specifically, Cacoperdo repeatedly cites *Dishman* v. *UNUM Life Insurance Co.*, 269 F.3d 974 (9th Cir. 2001) in his opposition papers. (Opp. at 7-8).  In *Dishman*, a plan participant sued under ERISA for the recovery of plan benefits and also sued under state law for invasion of privacy, arising from the actions of investigative firms hired by the plan administrator to investigate a disability claim, including impersonating the participant and a loan officer.  *Id.* at 979-980. Although the state law cause of action concerned ERISA and arose during the administration of the plan, the court held the claim was not preempted because it concerned "garden variety torts which only peripherally impact daily plan administration" and remained whether or not the benefit claim was ultimately paid. *Id.* at 983-984.  Unlike *Dishman*, where the administrator engaged in tortious behavior not required by the plan (*i.e.* overly aggressive surveillance activities), here, Hartford was required by the U.S. Department of Labor ("DOL") regulation to consult with health care professionals, such as those retained by MES and MLS, during the course of its review of Cacoperdo's claim on appeal.  *See* 29 C.F.R. § 2560.503-1(h)(3)(iii).  Because this action necessarily impacts plan administration, claims challenging MLS and MES's reasonable activities in the course of providing these services to Hartford are preempted by ERISA.

Cacoperdo's entire opposition to ERISA preemption, in fact, is an exercise in misdirection that discusses cases that are not even remotely on point.  (Opp. at 6-8).  Actions for torts, such as auto accidents or personal injuries, have nothing whatsoever to do with the administration of employee welfare

4

benefit plans. These cases are not relevant to a cause of action seeking monetary relief comprised of past and continuing benefits under an ERISA Plan. Cacoperdo unabashedly seeks an order reinstating his benefits under the Plan, while at the same time, pretends that his claims are unrelated to the Plan itself. Given that Cacoperdo's new proposed claims have a direct relationship to ERISA Plan administration, they are completely preempted by ERISA. *See Aetna Health Inc.* v. *Davila*, 542 U.S. 200, 210 (2004).

### C.    CACOPERDO'S FOCUS ON HARTFORD'S PURPORTED FINANCIAL RELATIONSHIP WITH MLS AND MES IS A RED HERRING

Cacoperdo misleads the court by focusing on Hartford's alleged relationship with MLS and MES, rather than addressing the primary obstacle of ERISA preemption pursuant to *Mertens*. Specifically, Cacoperdo attacks the independent medical peer review consultants as purportedly being biased, as well as for their alleged failure to appropriately investigate the medical merits of his claim. (Opp. at 5). But Cacoperdo's allegation that Hartford maintains significant financial relationships with MES and MLS is nothing more than a "red herring" and is not probative of the existence of whether a financial conflict of interest actually influenced Hartford's decision-making on his benefit claim. In fact, as a demonstration of Cacoperdo's attempt to mislead the Court concerning the issue third party medical record reviewers, he selectively quotes from the Supreme Court's decision in *Black & Decker* v. *Nord*, 538 U.S. 822, 832 (2003) to support his arguments concerning the independent consultant's potential bias and incentive to find a claimant "not disabled." (Opp. at 1). Yet Cacoperdo fails to quote the entire paragraph, and thus, misrepresents the Court's conclusion on this point, which is:

> [I]f a consultant engaged by a plan may have an "incentive" to make a finding of "not disabled," so a treating physician, in a close case, may favor a finding of "disabled."

Therefore, according to the Supreme Court, any purported financial bias that an independent medical peer review physician may have in favor of the entity that hires him/her is counter-balanced by the bias of the claimant's treating physician who likewise has a financial interest in perpetuating his patient's disability claim because doing so will continue a profitable relationship for his own practice. Indeed, the Second Circuit flatly rejected Cacoperdo's argument on this point, holding that a claim administrator does not abuse its discretion "by considering these trained physicians' opinions solely because they were selected,

5

and presumably compensated." *Hobson* v. *Metropolitan Life Ins. Co.,* 574 F.3d 75, 90 (2d Cir. 2009); *Rizzi* v. *Hartford Life and Accident Ins. Co.*, No. 09-cv-2107, 2010 WL 2473858, at *10 (10th Cir. June 18, 2010) (noting that "[g]eneral accusations of bias against . . . [the reviewing doctor] do not provide a reason to doubt what otherwise appear to be competent and reasonable opinions."); *Mugan* v. *Hartford Life Group Ins. Co.,* No. 09cv6711, 2011 WL 291851, at *11 (S.D.N.Y. Jan. 20, 2011).

Cacoperdo also offers certain "facts" contained in *Hall* v. *MLS National Medical Evaluations*, No. 05-185-JBC, 2006 WL 2367139 (E.D. Ky. Aug. 15, 2006) as somehow being relevant to Hartford's determination of his claim. As discussed above, *Hall* involves an individual who did not sue any ERISA entity for wrongful denial of benefits under the terms of his Plan, but instead sued a third party vendor who the insurer contracted with for independent medical examination services and who allegedly affirmatively altered the opinion of an independent medical examiner in order to ensure benefits would be denied. *Hall*, 2006 WL 2367139, at *1. The third-party vendor was alleged to have engaged in a rogue, independent act; that is, altering the opinion of the IME physician to reflect work capacity where none existed. *Id.*, at *1-2. The court emphasized that the plaintiff was not seeking redress for the wrongful denial of benefits under the terms of the Plan, but was instead alleging that the defendants transmitted fraudulent information to the insurer. *Id.*, at *2. Unlike the plaintiff in *Hall*, Cacoperdo has asserted a claim under ERISA for the allegedly wrongful denial of his benefit claim under the terms of the Plan. Accordingly, Robert Rosati's declaration from the unrelated *Hall* case, which was submitted by Cacoperdo (Opp. at 4), is not relevant evidence in support of Cacoperdo's proposed Amended Complaint, and should be disregarded.

Cacoperdo also improperly submits peer review reports from the case of *Testa* v. *Hartford Life.* (Opp. at 4). Notably while plaintiff in *Testa* argued that an unrelated third party vendor allegedly acted improperly, the court rejected that allegation and also rejected plaintiff's criticisms of the defendant's quality assurance procedures with respect to such third-party vendors. *Testa* v. *Hartford Life Ins. Co.*, No. 08-CV-816, 2011 WL 795055, at *7-8 (E.D.N.Y. March 1, 2011). In fact, the court in *Testa* found that there was no conflict of interest, and that Hartford's adverse benefit determination was properly supported

6

by substantial evidence, including reports from four *paid* medical consultants. *Id.* Accordingly, Cacoperdo's reference to plaintiff's submissions in *Testa* is irrelevant, unpersuasive, and improperly submitted in this case.[2]

It is also a telling indictment of Cacoperdo's tactics on this motion that he resorts to citing Hartford's relationship with an unrelated, independent medical review consulting company (University Disability Consortium ("UDC")), in order to provide "support" for his meritless arguments. (Opp. at 5). Indeed, even if Hartford did have a financial relationship with MES or MLS (an unsupported assertion), this relationship is irrelevant to the primary issue of concern, which is Hartford's proper consideration of the independent medical record peer reviewers' reports in connection with Cacoperdo's claim. *See Hobson*, 574 F.3d at 90 (quoting *Suren* v. *Metropolitan Life Ins. Co.*, No. 07-CV-4439, 2008 WL 4104461, at *11 (E.D.N.Y. Aug. 29, 2008)) (recognizing the fact that independent physician reviewers "were paid consultants does not disable [insurer] from considering their opinion in making benefits decisions.").

Further undercutting Cacoperdo's complaints about Hartford's relationships with MES and MLS is the fact that he improperly cites to the U.S. District Court decision in *Finley* v. *Hartford Life and Acc. Ins. Co.*, No. C 06-06247, 2009 WL 3517648 (N.D. Cal. Nov. 20, 2009), which, contrary to Cacoperdo's assertions, does not identify any improper relationship between Hartford and UDC. More importantly, *Finley* was *reversed* by the U.S. Court of Appeals for the Ninth Circuit, which held that "[t]he district court erred in assigning controlling weight to the conflict of interest factor because . . . the evidence in this case does not indicate that the conflict 'tainted the entire administrative process.'" *Finley* v. *Hartford Life and Acc. Ins. Co.*, No. 09–17778, 2010 WL 4116636, at *1 (9th Cir. Oct. 19, 2010).

Accordingly, Cacoperdo's discussion of Hartford's alleged financial relationship with MLS and MES should be disregarded as inaccurate and irrelevant, and certainly does not provide any grounds for an

---

[2] Notably, Cacoperdo did not even ask the Court to take judicial notice of the affidavits from *Testa* or *Hall*, as he knows that these have been improperly submitted. *See Lowe* v. *McDonald*, 221 F.2d 228, 230 (9th Cir. 1955) (As a general rule, "a court in one case will not take judicial notice of its own records in another and distinct case even between the same parties, unless the prior proceedings are introduced into evidence."); *see also Kalimian* v. *Liberty Mutual Fire Ins. Co.*, 300 F.2d 547, 550 n.1 (2d Cir. 1962) (noting that courts often decline to take judicial notice of facts in other cases unless they are related).

independent state-law cause of action against either of these parties.

### D. CACOPERDO'S FAILURE TO PLEAD THE ELEMENTS OF TORTIOUS INTERFERENCE IS GROUNDS FOR DISMISSAL

In opposition to Hartford's motion to dismiss, Cacoperdo relies on unsupported, conclusory statements to set out a claim for tortious interference. Specifically, Cacoperdo alleged that because MES and MLS have allegedly performed substantial work for insurers in general, they somehow are privy to the "contract" between the insurer and the insured. (Opp. at 9). However, Cacoperdo fails to explain that MES and MLS simply assist in the retention of independent medical record peer review consultants to review claimants' medical records and provide an opinion to clarify their functional capacity. MES and MLS would therefore have no reason to read, or even know the contents of, the claimants' respective LTD plans. In no way do Cacoperdo's inadequate allegations sufficiently satisfy the knowledge element for a tortious interference claim. *See Sovereign Business Forms, Inc.* v. *Stenrite Indus. Inc.*, No. 00CIV3867, 2000 WL 1772599, at *9 (S.D.N.Y. Nov. 28, 2000) ("Although a defendant need not be aware of all the details of a contract to be liable for tortious interference, it must have actual knowledge of a specific contract"); *Burns Jackson Miller Summit & Spitzer* v. *Lindner*, 88 A.D.2d 50, 452 N.Y.S.2d 80, 93 (2d Dep't 1982) (dismissing tortious interference claim because it requires pleading defendant's actual knowledge of the contract's existence, not mere conclusory allegations); *AA Tube Testing Co.* v. *Sohne*, 20 A.D.2d 639, 246 N.Y.S.2d 247 (2d Dep't 1964) (for tortious interference claim, plaintiff must allege defendant's actual knowledge; allegation that he should have known of the contract's existence is insufficient).

Cacoperdo also fails to sufficiently plead any breach of contract as a basis for the tortious interference claim. Specifically, Cacoperdo does not allege, with any specificity, how an adverse benefit determination, pursuant to the terms of an ERISA Plan, constitutes a breach of contract. *See World Wide Communications, Inc.* v. *Rozar*, No. 96Civ.1056, 1997 WL 795750, at *6-7 (S.D.N.Y. Dec. 30, 1997) (finding that tortious interference claim requires "more that merely conclusory language"). In fact, *there is no contract between Cacoperdo and Hartford* with which MLS or MES could have tortiously interfered; the relevant "contract" is between Hartford and Cacoperdo's former employer, Stop & Shop; *i.e.*, the group insurance

policy that Hartford issued to fund benefits under the Plan. As a participant in this ERISA Plan, Cacoperdo only has the right to pursue claims challenging Hartford's adverse determination under ERISA § 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B). He does not have any contract rights and any attempt to plead a breach of contract cause of action would be completely preempted by ERISA. *See Davila*, 542 U.S. at 210; *Cicio*, 208 F. Supp. 2d at 292. Accordingly, as explained above, any claims by Cacoperdo against MES and MLS for aiding and abetting Hartford's alleged breach of fiduciary duty in its administration of his claim for benefits are improper, pursuant to *Mertens, supra*. Ultimately, Cacoperdo has no ERISA claims against MES and MLS, and any state law claims, such as tortious interference, are preempted because they relate to the administration of an ERISA Plan. *Davila*, 542 U.S. at 210.

In its initial motion papers, Hartford cited to *Pugh* v. *Westreich*, No. A04-657, 2005 WL 14922 (Minn. Ct. App. Jan 4, 2005), for this proposition. (MOL at 17-18). While Cacoperdo correctly notes the irrelevant fact that the independent physician in *Pugh* was retained to perform an Independent Medical Exam, the facts of both cases are almost identical and the court's analysis and holding are exactly on point; that is, an independent medical consultant provided the insurer with his conclusions concerning the patient and this conclusion assisted the claim administrator in reaching its ultimate determination that the claim should be denied, as permitted under the policy. *Pugh*, 2005 WL 14922, at *4. The Court concluded that this did not preclude the appellant from challenging the adverse determination or pursuing further benefits, and thus, failed to constitute a proper pleading of the breach of contract element for a tortious interference claim.

For these reasons, if Cacoperdo's claims are not found by the Court to be preempted by ERISA or dismissed as against a non-fiduciary, they should be dismissed for failure to allege the required elements for tortious interference.

## POINT II

### PLAINTIFF'S AMENDED COMPLAINT SHOULD BE STRICKEN AS IMPROPERLY FILED

**A.     PLAINTIFF MAY NOT AMEND HIS COMPLAINT WITHOUT LEAVE OF COURT**

NY/702384v1

As discussed in Hartford's initial motion papers, it is well settled that a party may amend its pleadings once as a matter of course within 21 days after serving it, 21 days after service of a responsive pleading, or "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1) and (2). Cacoperdo essentially concedes in his opposition papers that he did not follow the Federal rules when he filed his amended complaint, and instead merely states that Judge Patterson's February 10, 2011 Scheduling Order (Doc. No. 10) allowed him to file an amended complaint without leave because it was filed by March 15, 2011. (Opp. at 11). This is an erroneous reading of the Scheduling Order. If this interpretation were accurate, it would render the Federal rules a nullity since such language typically appears on most scheduling orders. Rather, since Cacoperdo did not seek either Hartford's consent or the Court's leave, his amended complaint is improper and should be dismissed pursuant to Rule 15(a) on this basis alone.

## CONCLUSION

For the reasons set forth in Hartford's initial Memorandum of Law and for the foregoing reasons, this Court should grant Hartford's motion to dismiss Cacoperdo's Amended Complaint for failure to properly file the Amended Complaint and for failure to state a cause of action for which relief can be granted.

Dated: New York, New York
June 20, 2011

Respectfully Submitted,

s/
MICHAEL H. BERNSTEIN (MB 0579)
JOHN T. SEYBERT (JS 5014)
DANIEL M. MEIER (DM 2833)
SEDGWICK LLP
***Attorneys for Defendant***
HARTFORD LIFE INSURANCE COMPANY
125 Broad Street, 39th Floor
New York, New York 10004
Telephone: (212) 422-0202
Facsimile: (212) 422-0925

NY/702384v1

## CERTIFICATE OF SERVICE

I, DANIEL M. MEIER, hereby certify and affirm that a true and correct copy of the attached **DEFENDANT HARTFORD'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS CACOPERDO'S AMENDED COMPLAINT** was served via ECF and Regular Mail on June 20, 2011, upon the following:

| | |
|---|---|
| Jason A. Newfield, Esq.<br>Frankel & Newfield, P.C.<br>585 Stewart Avenue - Suite 312<br>Garden City, New York 11530 | Andrew I. Hamelsky, Esq.<br>White & Williams, LLP<br>One Penn Plaza<br>250 W. 34th Street, Suite 4110<br>New York, NY 10119 |

Dated: New York, New York
June 20, 2011

s/_____
DANIEL M. MEIER (DM 2833)