UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

MICHAEL CACOPERDO,

        Plaintiff,                      **OPINION AND ORDER**

        v.                              10 Civ. 7847 (RPP)

HARTFORD LIFE INSURANCE COMPANY,
et. al.,

        Defendants.

------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J**

**I.     Introduction**

On March 10, 2011, Plaintiff Michael Cacoperdo ("Plaintiff" or "Cacoperdo") filed an Amended Complaint asserting three causes of action. The first is a claim for benefits under section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, against Hartford Life Insurance Company ("Hartford"). Plaintiff alleges that Hartford improperly denied his claim for continuing long term disability benefits ("LTD benefits"). The second and third causes of action were brought against Medical Evaluations Specialists, Inc. ("MES") and MLS National Medical Evaluations, Inc. ("MLS"), respectively, who were retained by Hartford to prepare medical peer review reports. Plaintiff alleges that MES and MLS knew or should have known of a valid contract between Hartford and the Plaintiff, and that they induced Hartford to breach the contract by creating medical findings and opinions that would lead Hartford to fail to discharge its duties and obligations under the contract. Plaintiff alleges that as a result of these actions by MES and MLS, Hartford denied the Plaintiff's claim and refused to pay his LTD benefits.

1

Defendant Hartford moved to dismiss the entire Amended Complaint on procedural grounds. Each of the Defendants moved to dismiss the second and third causes of action on substantive grounds. For the reasons set forth below, the Defendants' motion to dismiss the second and third causes of action in the Amended Complaint is granted.

## II.   Background

Plaintiff Michael Cacoperdo was an employee at Stop & Shop Supermarkets Co. ("Stop & Shop"). (Plaintiff's Amended Complaint dated 3/8/11 ("Am. Compl.") ¶ 10.) During Plaintiff's employment with Stop & Shop, CNA Group Life Assurance Company issued to Stop & Shop a long term group disability income policy (the "LTD Plan" or "Plan") under Plan Number 83147923 (Id.) The LTD Plan provided, among other things, that disability insurance payments would be made to Plaintiff in the event that he became disabled due to injury or sickness. (Id. ¶ 20.) In 2003, Hartford purchased all of CNA's group disability plans. (Defendant Hartford's Memorandum of Law in Support of Motion to Dismiss Plaintiff's Amended Complaint dated 4/18/11 ("Def. Hartford Mem.") at 1.) Hartford insured and administered all CNA policies as the successor-in-interest. (Id.; see Am. Compl. ¶ 11.)

On or about February 2005, Plaintiff became disabled.[1] (Am. Compl. ¶ 21.) Plaintiff filed a claim for disability with Hartford which was accepted, and on August 29, 2005, Hartford commenced payments of benefits to Cacoperdo under the Plan. (Id. ¶ 23.) Plaintiff received payments until January 26, 2010 when Hartford ceased to make payments. (Id. ¶ 23, 25.) Plaintiff alleges that these conditions have resulted in restrictions and limitations in functionality that prevent him from performing his own occupation or any occupation as that term is defined in the policy. (Id. ¶ 24.)

---

[1] Cacoperdo suffers from "several co-morbid conditions." (Am. Compl. ¶ 24.) These conditions included "back and neck pain, herniations and degenerative disc disease, joint disease in the knee and carpal tunnel syndrome." (Id.)

After January 26, 2010, Hartford denied Cacoperdo's continued eligibility for LTD benefits on the grounds that Plaintiff "failed to submit proof demonstrating that he continued to meet the Plan's definition of disability beyond that date." (Hartford's Answer to Complaint ¶ 21.) Prior to its initial denial of Cacoperdo's claim, and in making its final appeal determination, Hartford relied on "medical record peer review reports" prepared by independent physicians. (Def. Hartford Mem. at 1.) MES and MLS retained these physicians pursuant to a service contract with Hartford. (Id.) Hartford's initial and appeal determinations were made, in part, by referencing these independent physicians' reports. (Id.) Hartford determined that Plaintiff's limitations and restrictions no longer barred him from engaging in any occupation as defined by the Plan. (Id.) Cacoperdo claims he is currently "totally disabled." (Am. Compl. ¶ 24.)

### III. Procedural History

On October 14, 2010, Plaintiff filed a Complaint against Hartford, alleging that Hartford willfully and wrongfully breached the terms and conditions of the Plan and improperly denied his claim for continuing LTD benefits under ERISA. (Plaintiff's Complaint dated 10/13/10 ¶ 21.) Plaintiff claims that Hartford is a "conflicted decision maker" because it has a financial interest in the outcome of Plaintiff's LTD claim, and that this structural conflict pervaded its handling of the claim. (Id. ¶¶ 28-29.) Plaintiff cites a number of alleged "procedural irregularities" in Hartford's claim handling, including the failure to perform a medical examination of Plaintiff; relying on "paid paper medical reviews by biased and unqualified evaluators"; and the selective review of medical records. (Id. ¶ 29.) In addition, Plaintiff alleges that Hartford terminated his claim without any improvement of his medical condition, failed to consider the Plaintiff's award of Social Security disability benefits, and overemphasized the results of the surveillance it obtained. (Id. ¶ 29.) Plaintiff requests the Court to review the case

3

*de novo* and to order Hartford to pay for the Plaintiff's LTD benefits as long as he remains "totally disabled." In addition, Plaintiff claims recovery of attorney's fees and costs pursuant to ERISA section 502(a). On January 11, 2011, Hartford submitted its Answer to the Complaint requesting a dismissal of the Plaintiff's cause of action, and an award of reasonable costs of suit and attorney's fees.

On March 10, 2011, Plaintiff submitted an Amended Complaint asserting causes of action against Defendant Hartford, as well as two new defendants—MES and MLS. Plaintiff alleges that MES and MLS knew or should have known of the valid contract between Hartford and the Plaintiff, and that they induced Hartford to breach the contract by creating medical findings and opinions that would lead Hartford to fail to discharge its duties and obligations under the contract. (Id. ¶¶ 45-57.) Plaintiff alleges that as a result of these actions by MES and MLS, Hartford denied the Plaintiff's claim and refused to pay Plaintiff's LTD benefits. (Id.) Plaintiff requests a jury trial on these causes of action, and in relief, seeks "the amount of disability insurance benefits that Plaintiff would have been entitled to, plus additional damages." (Id., Wherefore clause ¶¶ g, h.)

On April 18, 2011, Hartford filed a motion to dismiss the Amended Complaint pursuant to Rule 15(a) and Rule 12(b)(6), Fed. R. Civ. P., asserting that (1) the Amended Complaint should be stricken as improperly filed; (2) the Amended Complaint fails to state a claim for relief against MES and MLS; (3) the Amended Complaint should be dismissed for Plaintiff's unreasonable delay; and (4) Plaintiff is not entitled to a jury trial for the second and third counts under ERISA. (Def. Hartford Mem.)

Also on April 18, 2011, MLS filed an Answer to the Amended Complaint. On April 25, 2011, MES submitted a motion to dismiss, asserting that (1) Plaintiff's claim against them must

be dismissed as preempted; and (2) Plaintiff's Complaint must be dismissed for failure to state a plausible claim for tortious inducement. (Defendant MES's Memorandum of Law in Support of Motion to Dismiss Plaintiff's Amended Complaint dated 4/25/11 ("Def. MES Mem.")) On May 9, 2011, MLS filed a notice of concurrence with MES's motion to dismiss and moved to join in the relief requested by MES.

On May 27, 2011, Plaintiff submitted his response in opposition to the Defendants' motions to dismiss. On June 20, 2011, all three Defendants submitted their replies to the Plaintiff's opposition. Oral argument in this case took place on September 21, 2011.

**IV.    Legal Standard**

Pursuant to Fed. R. Civ. P. Rule 12(b)(6), a defendant may move to dismiss a claim if the plaintiff fails to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. In coming to its decision, the court must accept as true all of the allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). A claim will survive a motion to dismiss only if it has "facial plausibility"—meaning that "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949. On a motion to dismiss, the court may consider "the facts stated on the face of the Complaint and in documents appended to the Complaint or incorporated in the Complaint by reference, as well as [] matters of which judicial notice may be taken." Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir. 1994).

"Although for the purposes of a motion to dismiss [the court] must take all of the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S. Ct. at 1949-50 (citations omitted). "[W]here the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not 'show[n]' – 'that the pleader is entitled to relief.'" Id.at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

**V.    Discussion**

    **A.    Plaintiff's Amended Complaint Was Properly Filed**

Under Fed. R. Civ. P. 15(a)(1), a party may amend its pleadings as a matter of course within 21 days after serving it, or 21 days after service of a responsive pleading.  In all other cases, a party may amend its pleading "only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Here, Plaintiff's initial Complaint was sent to Hartford on October 18, 2010.  Hartford filed and served its Answer to the Complaint on January 11, 2011.  The Amended Complaint was filed on March 11, 2011—59 days later.

Defendant Hartford asserts that the last day for Plaintiff to have filed an amended complaint was February 1, 2011—21 days after the filing of their Answer.  (See Def. Hartford Mem. at 6-7.)  Plaintiff contends that the Court's February 10, 2011 Scheduling Order (the "Order") provided him with leave to file an amended complaint by March 15, 2011, because it states in paragraph three: "Amended Pleadings by 3/15/11."  (Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss dated 5/27/11 ("Pl. Mem.") at 11.)  Defendant argues that the Order is "more properly understood to permit amended pleadings, as a matter of course or by consent, to be filed on or before March 15, 2011 and the motions requiring leave of court to file an amended pleading be filed on or before that date."  (Def. Hartford Mem. at 7.)

Pursuant to the Scheduling Order, the Court allowed parties to amend the pleadings by March 15, 2011 and Plaintiff relied on that date. Therefore, the Amended Complaint was timely filed.

### B. Plaintiff's Claims against MES and MLS are Preempted by ERISA

The provisions of ERISA apply to any employee benefit plan that is established or maintained by "any employer engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. § 1003(a)(1). Congress intended to make the remedy under ERISA exclusive by creating a preemption clause in section 514(a) of the legislation (the "preemption clause"). 29 U.S.C. § 1144(a); see also Aetna Health, Inc. v. Davila, 542 U.S. 200, 208 (2004). The benefits determination made pursuant to the provisions "supersede any and all State laws insofar as they may . . . relate to any employee benefit plan." 29 U.S.C. § 1144(a). A state law claim relates to an ERISA plan "if it has a connection with or reference to such a plan." Shay v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983). Thus, "the preemption clause is not limited to 'state laws specifically designed to affect employee benefit plans.'" Pilot Life Ins. v. Dedeaux, 481 U.S. 41, 47-48 (1987) (quoting Shay, 463 U.S. at 98).

However, the Supreme Court has cautioned against an "uncritical literalism" that would make preemption turn on "infinite connections." New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co. ("Travelers"), 514 U.S. 645, 656 (1995). "Instead, to determine whether a state law has the forbidden connection, we look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on the ERISA plan." Egelhoff v. Egelhoff, 532 U.S. 141, 147 (2001) (internal citations and quotations omitted).

7

The purpose for the preemption clause is to avoid a multiplicity of regulation and to enforce a uniform administration of employee benefit plans. Travelers, 514 U.S. at 645. The clause is meant to prevent the courts from creating an alternate enforcement mechanism for contesting a denial of benefits to the plaintiff's remedies. Id. at 658; Davila, 542 U.S. at 210 (holding that any state law claim is preempted if it amounts to an alternative theory for recovery based on conduct actionable under ERISA). Allowing certain remedies under state law would undermine the policy choices made pursuant to ERISA. Pilot, 481 U.S. at 54.

Cacoperdo argues that his state law tort claims are not preempted.[2] He cites Hall v. MLS Nat'l Med. Evaluators, No. 05-185-JBC, 2006 U.S. Dist. LEXIS 57965 (E.D. Ky. Aug. 15, 2006), for the proposition that ERISA does not preempt state law claims brought against a non-ERISA entity merely because that entity provided service to an ERISA-governed plan. (Pl. Mem. at 6). In Hall, the court held that ERISA did not preempt the plaintiff's state law tort claims against Defendant MLS. Though similar, the factual scenario in Hall is distinguishable from the case at hand. There, the allegation was that MLS "intentionally altered" a report that was transmitted orally to them by an independent physician who had evaluated the Plaintiff, "to make it appear that [plaintiff] was no longer disabled under the terms of the Plan." Hall, 2006 U.S. Dist LEXIS at *3. The Hall court based its holding on the fact that the plaintiff claimed a right to damages *not* based on a denial of "benefits owed under the terms of an ERISA plan" but "as a result of an independent breach of a duty of care." Id. at *7.

Plaintiff contends that "[t]he non-ERISA claims brought here do not speak to improper processing of a Plaintiff's benefit scheme, but, rather, speak to a scheme that involves the third-party vendor Defendants (MLS and MES) providing result oriented reports to Defendant

---

[2] Plaintiff is seeking relief against MES and MLS based on New York State Law and not under ERISA. (Transcript of Sept. 20, 2011 Oral Argument ("Tr.") at 17.)

Hartford," which allegedly induced Hartford to breach its obligations to the Plaintiff. (Pl.'s Mem. at 8). Thus, Plaintiff contends that the claims in this case are similar to those brought in Hall and in Dishman v. UNUM Life Insurance Co., 269 F.3d 974 (9th Cir. 2001). In Dishman, the plaintiff raised a state law tortious invasion of privacy claim in addition to his ERISA action. Dishman, 269 F.3d at 979. There, plaintiff alleged that the defendant had retained a private investigator who had engaged in improper behavior, including impersonating a bank loan officer, and falsely impersonating the plaintiff. Id. at 979-80. The Ninth Circuit held that Dishman's state law tort claim was not preempted, noting that "his damages for invasion of privacy" would remain whether or not his benefits were ultimately paid, and thus, "[h]is tort claim does not depend on or derive from his claim for benefits in any meaningful way." Id.

Plaintiff also relies on Barker v. Hartford Life & Acc. Ins. Co., No. 3:06-CV-1514-P, 2007 U.S. Dist. LEXIS 55532 (N.D. Tex. July 31, 2007). In Barker, the court found that plaintiff Barker's state law tort claim for intentional infliction of emotional distress ("IIED") based on defendant Hartford's alleged hostile conduct during investigation of Barker's benefits claim was not preempted by ERISA. The court reasoned that "Barker's IIED claim, at least in part, does not affect the duties of the parties arising from the actual terms of the ERISA plan. That is, determining whether or not Defendant's interviewing techniques are tortious does not require interpretation of the Plan . . . ." Id. at *14. However, the court found "any claim for IIED based on Hartford's termination of Plaintiff's benefits preempted by ERISA." Id.

Unlike the invasion of privacy claims in Dishman, or the IIED claim in Barker, Cacoperdo's state law claim for tortious inducement of breach of contract *does* in fact derive from his benefits claim. Cacoperdo claims that MLS and MES interfered with the alleged benefits due to him under the Plan by inducing Hartford to breach its contract. Cacoperdo would

9

not have a state law claim to bring if Hartford did not deny his LTD benefits, as neither MLS nor MES owed Cacoperdo any independent legal duty. Therefore, the state law claim here stems from the Plan that is breached—not an independent duty of care owed to the Plaintiff by MLS or MES.

Furthermore, Plaintiff has not alleged any direct wrongdoing by MES or MLS in this case, of the sort that was present in Hall.  Instead, he urges the Court to infer wrongdoing based on the parties' behavior in *other* cases.  (Pl. Mem. at 3-4.)  Plaintiff points to the allegations against MLS detailed in the Hall case, as well as those contained in a declaration submitted in Hall which references another ERISA action from the Eastern District of Michigan, where MLS was alleged to have altered a physician's report.[3]  (Id.)  Plaintiff alleges that these cases demonstrate that "this conduct is not an isolated occurrence."  (Id. at 3.)

In addition, Plaintiff points to Testa v. Hartford Life Insurance Co., No. 08-CV-816, 2011 WL 795055 (E.D.N.Y. Mar. 1, 2011), as an example of Hartford's prior involvement "with an altered report" by a third-party vendor.  (Pl. Mem. at 4).  In Testa, a fifty-two year-old payroll supervisor brought an ERISA claim against claim administrator Hartford after her LTD benefits were terminated.  Testa, 2011 WL 795055, at *1.  In making its decision to terminate Testa's benefits, Hartford relied on reports from third-party vendor Reed Review Services ("RRS")—an independent medical service similar to MES and MLS—who retained two specialists to review Testa's case.  Id. at *3.  Through the discovery process, Testa allegedly discovered that one of the reports submitted to Hartford by RRS had been redacted and "sanitizied."[4]  (See Tr. at 22; Pl. Mem. at 4.)

---

[3] Plaintiff provides a Declaration submitted in the Hall case by Robert Rosati, Esq. (Newfield Dec., Ex. B) referencing Cleveland v. Liberty Life Assurance Co. of Boston, 2:06-cv-13780 (E.D. Mich.).
[4] Both the "unaltered original report" and the "sanitized" report that RRS produced in Testa were submitted to the Court in this case. (See Declaration of Jason Newfield dated 5/27/11 ("Newfield Dec."), Ex. C.)

Plaintiff alleges that the report in Testa was altered when it went through "'quality assurance' channels," and argues that the same may have happened in this case.[5] However, as counsel for Plaintiff conceded at oral argument, he has no direct evidence supporting this contention.[6] Furthermore, Plaintiff's only evidence with respect to Defendant MES is that "they have been shown to provide thousands of reports to insurance companies, including Hartford, on an annual basis." (Tr. at 26.)

As counsel for MLS aptly summarized at oral argument, Plaintiff's claims against MLS and MES boil down to the proposition that, "where there is smoke in other cases . . . that means that in this case . . . there is fire . . . ." (Tr. at 41.) There is simply no direct evidence that either of the third-party vendors breached an independent duty of care owed to Cacoperdo. The state law claims are directly related to Hartford's administration of the Plan and thus are preempted by section 514(a) of ERISA.

### C. Plaintiff is not Entitled to Discovery from MES or MLS at this Stage

Plaintiff argues that, under Testa, at the very least his case against MES and MLS should proceed to the discovery stage in order for him to explore whether or not there are errors with the reports they provided to Hartford. However, his reliance on Testa is misplaced. In Testa, third-party vendor RRS was *not* one of the named defendants in the case. The discovery obtained by Testa with respect to RRS stemmed directly from her case against Hartford. Cacoperdo seeks separate discovery from MES and MLS to determine whether there is sufficient evidence to plead tortious interference. This is not allowed. To survive a motion to dismiss, a complaint

---

[5] Plaintiff submitted an email dated May 19, 2010 from MLS and Hartford that references a report made by Dr. Esman, a physician retained by MLS to review Cacoperdo's file. The email states that "once [her dictation] is transcribed, it will proceed to the QA stage for review and clarification." (Newfield Dec., Ex. D.) At oral argument, counsel for Plaintiff expressed a belief that in fact, "'review and clarification' . . . means edit and revision or alteration as has happened in the past . . . ." (Tr. at 25.)

[6] "I don't have the smoking gun for that. All I have is evidence from other cases where such conduct has occurred, so that is how I am drawing that inference . . . ." (Id. at 26.)

11

must state, on its face, a plausible claim for relief. Iqbal, 129 S.Ct. at 1950. Furthermore, a plaintiff must plead factual allegations to allow the court to draw reasonable inferences that the defendant is possibly liable for the alleged misconduct. Id. at 1949.

Limited discovery should not be granted because no factual allegations have been pled with any amount of specificity against MES and MLS that would support an independent state law tort claim against them. The Court will not allow Cacoperdo to engage in a fishing expedition against non-fiduciary third-party vendors in order to determine whether any factual allegations can be made. If Cacoperdo believes he is entitled to this sort of discovery,[7] he can seek to obtain it as this case proceeds against Defendant Hartford.

## VI. Conclusion

Plaintiff's state law tort claims against MES and MLS are preempted by ERISA. Therefore the motion to dismiss the second and third causes of action in the Amended Complaint is granted. Plaintiff may proceed on the first cause of action.

SO ORDERED.

Dated: New York, New York
       October 5, 2011

                                                    _____
                                                    Robert P. Patterson
                                                    U.S.D.J.

---

[7] At oral argument, counsel for Plaintiff expressed this belief in no uncertain terms:
  THE COURT: So your position is that you are entitled to get this discovery if you just bring the case against Hartford[?]
  MR. NEWFIELD: That would be my position.
(Tr. at 23.)

12

Copies of this opinion were sent to:

*Counsel for Plaintiff:*

**Jason A. Newfield**
Frankel & Newfield, P.C.
585 Stewart Avenue
Suite 301
Garden City, NY 11530
(516) 222-1600
Fax: (516) 222-0513

*Counsel for Defendant Hartford Life Ins. Co.:*

**Michael H. Bernstein**
Sedgwick LLP
125 Broad Street, 39th Floor
New York, NY 10004
(212) 422-0202
Fax: (212) 422-0925

*Counsel for Defendant MLS National Medical Evaluations, Inc.:*

**Thomas Gibbons**
Law Offices of Charles J. Siegel
40 Wall Street, 7th Floor
New York, NY 10005
(212) 440-2350
Fax: (212) 440-2380

*Counsel for Medical Evaluation Specialists, Inc.:*

**Andrew I. Hamelsky**
White and Williams, LLP(NYC)
One Penn Plaza
250 W. 34th Street
Suite 4110
New York, NY 10119
(212) 631-4406
Fax: (212) 631-4426