Jason A. Newfield (JN-5529)
Justin C. Frankel (JF-5983)
FRANKEL & NEWFIELD, P.C.
585 Stewart Avenue, Suite 312
Garden City, New York 11530
(516) 222-1600
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                              :

MICHAEL CACOPERDO,             :    10 CV 7847 (RPP)

                                              :    **ECF**

                  Plaintiff,     :

  - vs. -                                 :

HARTFORD LIFE INS. CO.,          :

                  Defendants.  :
------------------------------------------------------------x

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

FRANKEL & NEWFIELD, P.C.
585 Stewart Avenue, Suite 312
Garden City, New York 11530
(516) 222-1600
Attorneys for Plaintiff

Of Counsel:        Jason A. Newfield (JN-5529)
                         Justin C. Frankel (JF-5983)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................1

**ARGUMENT**

    I. HARTFORD'S UNSUPPORTED ARGUMENTS ARE NOT EVIDENCE ................2

    II. HOBSON DOES NOT COMPEL THE RESULT SOUGHT BY HARTFORD .............4

    III. HARTFORD'S DOCTORS' OPINIONS ARE NOT SUBSTANTIAL EVIDENCE ......7

    IV. HARTFORD'S CONFLICT OF INTEREST ...................................................9

    V. A TRIAL SHOULD BE HELD IF ISSUES OF FACT REMAIN UNRESOLVED......10

CONCLUSION........................................................................................10

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                              **Page**

Barber v. Sun Life, 2012 U.S. Dist. LEXIS 22607 (D. Conn. 2012).................................10

Black & Decker v. Nord, 538 U.S. 822 (2003)..........................................................7

Bregman v. Hartford Life & Acc. Ins. Co., 2008 U.S. Dist. LEXIS 72500,
* 23-24 (D. Conn. 2008).....................................................................................8

Calvert v. Firstar Fin., Inc., 409 F.3d 286, 296 (6th Cir. 2005)....................................6

Diamond v. Reliance Std. Ins., 672 F.Supp.2d 530, 537 (S.D.N.Y. 2009)...................7

Durakovic v. Building Service 32 BJ Pension Fund, 609 F.3d 133, 140
(2d Cir. 2010).........................................................................................................5, 6, 9

Hanusik v. Hartford Life Ins. Co., 2008 U.S. Dist. LEXIS 7520, * 13-14 (E.D. Mich. 2008)..........................................................................................................................1

Hobson v. Met Life, 574 F.3d 75 (2d Cir. 2009) ...............................................1, 4, 5, 6, 8

Holmstrom v. Met Life, 615 F.3d 758, 775 (7th Cir. 2010)..........................................6

Hunter v. Life Ins. Co. of N.A., 437 Fed. Appx. 372, 378 (6th Cir. 2011)....................1, 6

Jordan v. Northrop Grumman, 370 F.3d 869 (9th Cir. 2004) ....................................3

Levitian v. Sun Life & Health Ins. Co., 2012 U.S. App. LEXIS 12340, * 8 (2d Cir., June 19, 2012)..............................................................................................................2, 6, 10

Magee v. Met Life, 632 F.Supp.2d 308, 321 (S.D.N.Y. 2009)......................................10

McCauley v. First Unum Life Ins. Co., 551 F.3d 126, 138 (2d Cir 2008)...................5, 6

Menucci v. Hartford Life Ins. Co., 2010 U.S. Dist. LEXIS 123598 at *17-18 (S.D. Ohio 2010).........................................................................................................................2

Met Life v. Glenn, 128 S.Ct. 2343 (2008).............................................................2, 6, 9, 10

Montour v. Hartford Life & Acc. Ins. Co., 588 F.3d 623, 634 (9th Cir. 2009)..............6

Mote v. Aetna Life Ins. Co., 502 F.3d 601, 607 (7th Cir. 2007)....................................8

Nicula v. First UNUM Life Ins. Co., 23 Fed. Appx. 805, 807 (9th Cir. 2001)...............6

O'Hara v. National Union Fire Ins. Co. of Pittsburgh, Pa., 642 F.3d 110 (2d Cir. 2011)..................................................................................................................10

Rappa v. Conn. Gen. Life Ins. Co., 2007 U.S. Dist. LEXIS 91094, * 34-35 (E.D.N.Y. 2007) ..............................................................................................................7, 8

Ross v. Verizon, 2011 US Dist. LEXIS 109471, at * 66-67 (N.D.N.Y. 2011).........................8

Salomaa v. Honda LTD Plan, 637 F.3d 958 (9th Cir. 2011)..............................................3

Soron v. Liberty Life Assur. Co., 2005 U.S. Dist. LEXIS 9106 (N.D.N.Y. 2005)............7, 8

Soucy v. First Unum Life Ins. Co., 2011 U.S. Dist. LEXIS 27938,* 80 (D. Conn. 2011).....6

Testa v. Hartford Life, 2012 U.S. App. LEXIS 9806 (2d Cir. 2012)(unpublished)......1, 5, 6

Williams v. Aetna Life Ins. Co. of Boston, 509 F.3d 317, 325 (7th Cir. 2007)......................6

## PRELIMINARY STATEMENT

Cacoperdo respectfully submits this reply memorandum in further support of summary judgment. The parties' submissions demonstrate a sharp dichotomy of the appropriate consideration for a court on summary judgment motions in an ERISA case. Hartford urges this Court to "rubber stamp" its conflict influenced, biased and flawed claim review process and determination, while Cacoperdo urges that courts are mandated to consider the totality of the issues, in combination, to arrive at a determination as to whether there is substantial "evidence" to support the termination of his claim. Cacoperdo's submissions demonstrate that substantial evidence is lacking to support Hartford's claim termination. Other than limited surveillance, latched upon by Hartford, and the predominant evidence utilized by its hired doctors, there is nothing to sustain Hartford's claim position. The one point the parties agree upon is that the surveillance speaks for itself. Cacoperdo urges this Court to consider how little impact the surveillance and admitted activities have in translating into full time work functionality, while Hartford rests its termination upon such material[1].

Hartford continues to present unsupported claims and accusations which derive no support in the record. Simultaneously, Hartford lodges numerous attacks upon Cacoperdo's arguments that strain its credibility even further than its claim handling, and are demonstrably false. Lastly, Hartford rests much of its argument upon Hobson v. Met Life, 574 F.3d 75 (2d Cir. 2009), a case with readily distinguishable factually which fails to govern a myriad of issues involved here.[2]

---

[1] Hartford's surveillance and the purported "inconsistencies" are overstated in an effort to defend its otherwise weak support for terminating Cacoperdo's claim. See Hunter v. Life Ins. Co. of N.A., 437 Fed. Appx. 372, 378 (6th Cir. 2011), citing Hanusik v. Hartford Life Ins. Co., 2008 U.S. Dist. LEXIS 7520, * 13-14 (E.D. Mich. 2008). The isolated activity observed does not render the opinions of Cacoperdo's physicians' inconsistent, as they stated no *sustained* abilities. Hartford seeks to rely upon its investigator's "summary" rather than an actual review of the surveillance.

[2] Hartford chastises Cacoperdo for not advising the Court about the summary order in Testa v. Hartford Life, 2012 U.S. App. LEXIS 9806 (2d Cir. 2012)(unpublished). That case was decided at the District Court largely upon the absence of any conflict of interest (Hartford did not fund the benefits at issue), and where the Second Circuit determined that "virtually all of Testa's symptoms were self-reported and supported by little, if any, objectively verifiable evidence." In contrast here, Cacoperdo has numerous MRIs and test results to verify his symptoms, restrictions and

Morever, in light of Levitian v. Sun Life & Health Ins. Co., 2012 U.S. App. LEXIS 12340, * 8 (2d Cir., June 19, 2012), it is apparent the Second Circuit appreciates the precedential impact of Met Life v. Glenn, 128 S.Ct. 2343 (2008) Thus, Hartford's efforts fail, and summary judgment should be granted to Cacoperdo. Alternatively, the Court could determine issues of fact require a trial.

I.   **HARTFORD'S UNSUPPORTED ARGUMENTS ARE NOT EVIDENCE**

In the face of strong evidence that Hartford failed to provide Cacoperdo a full and fair review, Hartford makes a number of statements which lack evidentiary or legal support. Hartford claims that **(1)** Dr. Esman reviewed all of the 2010 MRIs, because she "begins her report by stating that "All records provided by The Hartford were reviewed."" (Def. Opp., p.13).[3] As noted in Cacoperdo's opposition, this statement suggests either that **(a)** Dr. Esman was not truthful, or **(b)** that Hartford did not provide the MRIs for her review. Hartford seeks to obfuscate the record by quoting her report, but the reality is one of the two above conclusions, neither of which support that Hartford provided a full or fair review. The fact Dr. Esman discusses a 2010 MRI in her report does not resolve the issue; she specifically discussed it in connection with her peer to peer contact with Dr. Kelman (who, while on the phone with Dr. Esman, actually reviewed the lumbar MRI film he ordered), and found it supported complete disability (an opinion she completely disregarded). Again, this does not demonstrate she reviewed the MRIs – and there is no record evidence that she was provided or reviewed the MRIs, or even the MRI reports- just that she spoke with Dr. Kelman.[4]

---

limitations. Hartford failed to have Dr. Esman even consider these most recent objective test results.

[3]   Hartford boldly asserts that "Cacoperdo provides no proof to support his argument" Dr. Esman was not provided with the 2010 MRIs or Dr. Poole's February 2010 office note. (Def. Opp., p. 12). Proof is readily found within Dr. Esman's report, on pages 1-2, where she provides the "List of Medical Documentation". The absence of these materials is ample proof, despite Hartford's protestations. See Menucci v. Hartford Life Ins. Co., 2010 U.S. Dist. LEXIS 123598 at *17-18 (S.D. Ohio 2010)(concerns about lack of proof doctors reviewed all medicals and impact upon process).

[4]   Incredibly, Hartford makes the argument that "[t]he fact that Dr. Esman did not list every medical record does not mean that her review was incomplete." (Def. Opp., p.13). While this

2

Hartford also falsely states **(2)** Dr. Kelman discussed **all** of Cacoperdo's recent MRIs (the 2010 MRIs) with Dr. Esman (Def. Opp., p. 13). This is untrue, as her report specifically notes that she and Dr. Kelman only discussed the lumbar MRI (451). Despite what Hartford urges, none of the 2010 MRI findings are "explicitly noted in Dr. Esman's report." (Def. Opp., p.13). They are not explicitly noted because Dr. Esman did not review, or was not provided, these 2010 MRIs or reports.

In an effort to buttress Dr. Esman's opinion, Hartford asserts that she spent 8 of 13 pages of her report summarizing several years of medical records – the majority of which are from 2005 and 2006, while simultaneously arguing that Dr. Marion's 2005 report was "outdated" (Def. Opp., p.10), wherein he found that Cacoperdo was incapable of sedentary work, with his condition unlikely to improve (1059-62). Hartford cannot reconcile these divergent arguments. Either the majority of records reviewed by Dr. Esman were outdated – and thus, her opinion lacking because she did not address the most recent objective testing, or Dr. Marion's report carries weight, and cannot be completely dismissed, as Hartford has sought to achieve.

Hartford also miscasts the record to suggest **(3)** none of Cacoperdo's doctors would comment upon the surveillance (Def. Opp., p.17), a claim belied by the record evidence. Dr. Miceli specifically responded to Hartford's editorialized commentary about the surveillance, in a November 13, 2009 response (562-3), which Hartford admitted in its claim notes. (207)[5]. Hartford distorts the record, in its concerted effort to mislead the Court. Moreover, Dr. Kelman addressed it during his

---

statement is true in theory, the reality is her review **was incomplete** because she **did not review** these materials. Hartford's incredulous argument is belied by the record, as Dr. Esman's report identified the **complete array** of documents reviewed, and she spent 7 pages of her report addressing the medical records she was provided, none of which identify or discuss these 2010 MRIs or Dr. Poole's February 2010 office note. Hartford cannot overcome this fatal flaw in its review process.

[5]   Hartford's claim is thus factually incorrect, on top of relying upon an abrogated case from outside this Circuit. Jordan v. Northrop Grumman, 370 F.3d 869 (9th Cir. 2004) is not good law following Salomaa v. Honda LTD Plan, 637 F.3d 958 (9th Cir. 2011)

3

peer call with Dr. Esman.[6] (451). Hartford also urges (**4**) Dr. Topper's findings of a **total** of 8.5 hours of ability (6 hours total of sitting, and 2.5 hours total of standing/walking), supports full time work functionality. (Def. Opp., p.12). Even embracing Dr. Topper's assessment of Cacoperdo's maximal functionality reveals he is not able to work full time, as this total amount of overall functionality cannot logically support full time sustained work.

Hartford continues to (**5**) misstate the record as it pertains to Cacoperdo's numerous physical examination findings. A number of these misstatements were identified within Cacoperdo's opposition brief, pages 20-21. Lastly, Hartford falsely states (**6**) that Cacoperdo only admitted to any level of functionality **AFTER** being shown the surveillance, an untrue claim, belied by his statement to Hartford's investigator. (39-41). (Def. Opp., p.7). Nonetheless, Hartford continues down this path, in an undying effort to overcome its inability to counter the numerous findings Cacoperdo's physicians consistently provided throughout his treatment to support his impairments.

## II.    HOBSON DOES NOT COMPEL THE RESULT SOUGHT BY HARTFORD

Hartford rests the majority of its argument upon Hobson v. Met Life, 574 F.3d 75 (2d Cir. 2009), chastising Cacoperdo for not conceding this case on the basis of Hobson. Yet, Hobson does not compel the rubber stamping of Hartford's claim termination, for numerous reasons. First, the facts here are readily distinguishable from Hobson in critical respects. Because this firm represented Hobson, we are uniquely able to demonstrate how these cases are distinguishable.

The Second Circuit determined Hobson lacked the support of her treating providers, noting one doctor conceded he 'd[id] not feel that Ms. Hobson [wa]s disabled and d[id not] understand why she cannot do her job, which is sedentary." Id. at 86. The Court further noted "[A]s Hobson's own treating physician conceded, it is far from clear that Hobson's medical records demonstrated that she

---

[6] Hartford boldly challenges Dr. Kelman's findings because it claims he did not "actually review any" records, yet ignores that he not only reviewed the actual 2010 MRI film (while talking with Dr. Esman) - but performed a physical examination with his own findings. (502-04).

was disabled." Id. at 85. Another one of her treating physicians indicated "he was not qualified to opine on whether she otherwise suffers disabilities" after noting that she had no discernable dermatologic disability. Id. at 82. In contrast, Cacoperdo's doctor did not equivocate on the extent of his impairment (as in Hobson), nor lack clarity regarding his condition and impairment. Id. at 80.

Further, in Hobson, the Social Security determination carried little value, because some of the conditions upon which she was awarded Social Security benefits had resolved. Id. at 92. There is no evidence Cacoperdo's conditions had resolved, and in fact, they got demonstrably worse over time-as shown by 2010 MRIs. Third, the Court was unconvinced that a conflict of interest impacted the claim handling, for reasons vastly different from here. There, the court isolated two conflict of interest issues and found that neither carried weight toward consideration of the conflict[7]. Id. at 83.

In further contrast with Hobson, here the Court has persuasive "case specific" evidence that Hartford's conflict was significant. Durakovic v. Bldg. Serv. 32 BJ Pension Fund, 609 F.3d 133, 140-41 (2d Cir. 2010). Guiding the Second Circuit's affording the conflict more weight there was the "one-sided" consideration of the evidence; a fact that parallels Hartford's conduct here, and that it took "seemingly inconsistent" positions that were financially advantageous, as Hartford did here (but did not do in Testa). Thus, numerous aspects of Hartford's conduct, addressed in Cacoperdo's prior briefs, demonstrate a significant impact caused by its conflict of interest. Notably, despite Durakovic being decided in the wake of Hobson, Hartford does not meaningfully address this case, nor does Hartford substantively address the impact of McCauley v. First Unum Life Ins. Co., 551 F.3d 126, 134-38 (2d Cir. 2008)(where conflict afforded weight due to the reliance upon a single medical report to the detriment of a more detailed report).

To the extent this Court is governed by Second Circuit precedent over the U.S. Supreme

---

[7] These two issues were considered insignificant as Met Life reinstated Hobson's claim numerous times, which the Court deemed evidence of fairness by Met Life. In sharp contrast here, Hartford took Cacoperdo's claim from the Stable and Mature unit to termination in a short time span.

5

Court (which appears to be Hartford's contention), this Court should be guided by the principles espoused not only by Hobson, but by Durakovic and McCauley. It is respectfully submitted that Cacoperdo's claim is more closely aligned with the facts in Durakovic and McCauley than Hobson.[8] Finally, Hobson relied upon a number of sister circuit cases to support various propositions, and many of these cases from sister circuits are no longer good law, and these circuits have altered their positions – in a manner similar to the arguments advanced by Cacoperdo.[9] Thus, Hobson has little value to this Court's analysis, particularly in light of Levitian and Glenn.

Significantly, where the Supreme Court emphasized "ERISA imposes higher-than-marketplace quality standards on insurers", Id. at 2349-50, such guidance is not abrogated by Hobson. Rather, each case before a court will be decided following a consideration of a combination of factors. Id. at 2351. This has been emphasized by the Second Circuit's most recent consideration of these issues. Levitian. Further, as noted by a sister court within the Second Circuit, "[A] court's review of a plan administrator's denial of benefits 'should be guided by principles of trust law.'" Soucy v. First Unum Life Ins. Co., 2011 U.S. Dist. LEXIS 27938,* 80 (D. Conn. 2011).

Cacoperdo's claim is more aligned to Wanda Glenn's claim than to Hobson's. Id. at 2351-52

---

[8] The Hobson/Testa approach was to isolate the issues under consideration, rather than engage in the appropriate combination of factors approach applied by Glenn and reinforced by Levitian. Note the language employed in Testa, in addressing Hartford's decision to credit its own doctors over Testa's doctors, stating such conduct "is not, in and of itself, grounds for reversing the objectively verifiable evidence." 2012 U.S. App. LEXIS 9806, at * 3. Here, in addition to Hartford simply adopting its own doctors conclusions, Hartford relied upon an outdated EAR, overemphasized surveillance, disavowed the SSDI determination made after a hearing (1018-21), disavowed a prior medical review from its own hired doctor (1059-62), and failed to have its reviewer consider significant objective medical evidence. This combination of factors is vastly different than what the Second Circuit saw with Testa. In fact, Testa does not even cite Glenn.

[9] See Montour v. Hartford 588 F3d 623 (9th Cir Nov. 2009), which alters the approach cited by the Second Circuit's reliance upon Nicula v. First UNUM Life Ins. Co., 23 Fed. Appx. 805, 807 (9th Cir. 2001); and Holmstrom v. Met Life, 615 F.3d 758, 775 (7th Cir. 2010), altering reliance upon Williams v. Aetna Life Ins. Co. of Boston, 509 F.3d 317, 325 (7th Cir. 2007), and Hunter v. Life Ins. Co. of N.A., 437 Fed. Appx. 372 (6th Cir. 2011), altering reliance upon Calvert v. Firstar Fin., Inc., 409 F.3d 286, 296 (6th Cir. 2005).

(discussing the application of the combination of factors engaged in by the Sixth Circuit, noting no evidence of Met Life's efforts to assure accurate claims assessment, the Social Security issue, the emphasis of certain records supporting its position while de-emphasizing others supportive of paying the claim, and the failure to provide its hired doctors with all relevant evidence.)

### III. HARTFORD'S DOCTORS' OPINIONS ARE NOT SUBSTANTIAL EVIDENCE

Hartford attacks Cacoperdo's argument about the weight to be afforded treating physicians in contrast with its wholesale adoption of reports from hired, non-examining physicians. Cacoperdo has provided a legally supported analytical framework from which to consider the issue. Yet, Hartford refuses to consider Soron v. Liberty Life Assur. Co. of Boston, 2005 U.S. Dist. LEXIS 42972, * 35 (N.D.N.Y. 2005) and the numerous cases which have adopted similar approaches. Hartford instead argues Soron incorrectly interpreted Black & Decker v. Nord, 538 U.S. 822 (2003). However, Soron *harmonizes with* Nord, and provides an important articulation of factors to be considered (presented in Cacoperdo's moving brief, at p. 12-13) stating (emphasis added):

> Black & Decker simply eliminates the **special** deference given to treating physician's opinions. It does nothing to alter the **standards of reasonableness** in **weighing conflicting medical opinions**. The factors for logically weighing such opinions, as articulated in 20 C.F.R. § 404.1527(d)(2), are **unaffected and remain instructive**.

Soron discussed that Black & Decker suggests nothing to negate the inference that an examining physician, would, absent some particular reason, logically be afforded more consideration than physicians who only perform paper reviews. Id.; see also Rappa v. Conn. Gen. Life Ins. Co., 2007 U.S. Dist. LEXIS 91094, * 34-35 (E.D.N.Y. 2007); Diamond v. Reliance Std. Ins., 672 F.Supp.2d 530, 537 (S.D.N.Y. 2009). To be clear, and contrary to Hartford's effort to miscast the issue, (Def. Opp., p.16) Cacoperdo does not claim this Court **must** adopt Cacoperdo's treating doctors' opinions; but rather, urges that upon consideration of the factors, including (1) the long-standing treatment by Cacoperdo's doctors, (2) their credentials, and (3) the consistent opinions provided, these opinions are significantly greater evidence than non-examining, paper only reviewing reports from biased,

7

unqualified doctors, who failed to review the most recent objective test results[10]. Instead of addressing the substance of Cacoperdo's argument, Hartford simply tries to discard the well-reasoned analysis that Soron and other more recent cases have employed.[11]  See also Ross v. Verizon, 2011 US Dist. LEXIS 109471, at * 66-67 (N.D.N.Y. 2011)(distinguishing Hobson and noting the dismissive treatment of the attending physicians' opinions). Hartford's dismissive treatment of Cacoperdo's physicians opinions should receive no better consideration than in Ross.

Hartford also argues, relying upon the most outlying of decisions, Mote v. Aetna Life Ins. Co., 502 F.3d 601, 607 (7th Cir. 2007), that physicians simply blindly accept claimants' subjective complaints. However, where as here, subjective complaints are supported and corroborated by physical and clinical examination findings and MRI results, Mote is of no value. Moreover, where a non-examining physician, who did not even review the current objective test results, determines the subjective symptoms "far outweigh" the objective findings, it is clear such opinions are the result of bias and/or incompetence. Hartford portrays that Dr. Esman gave ample consideration to Cacoperdo's subjective complaints (Def. Opp., p.17), but fails to reconcile this with her unambiguous statement that her opinion was "[b]ased solely upon the objective findings." (453).

Incredibly, Hartford attacks Cacoperdo's challenge to the EAR by asserting that Cacoperdo failed to raise this challenge to the EAR *during the administrative process*. This argument obviously misses its mark, as the challenge to the EAR resulted **FROM** Hartford's appeal consideration, or lack thereof, and the materials submitted in connection with the appeal (including the 2010 MRIs). Cacoperdo could not have challenged the 2009 EAR on that ground, as it had not yet ripened, and

---

[10]     Hartford has no concerns about the Court reviewing declarations it submits (including the Barbara Campbell declaration about Dr. Topper and his "qualifications"), while asserting the Court may not consider any of Cacoperdo's extra record evidence which impacts that analysis.

[11]     Hartford does not even address Bregman v. Hartford Life & Acc. Ins. Co., 2008 U.S. Dist. LEXIS 72500, at *16-17 (J. Droney, D. Conn. 2008) or Rappa,

8

presumably, Cacoperdo had faith that Hartford's intention to perform a full and fair review would be accomplished, with not only the consideration of this newly generated medical evidence, but with a revised EAR to incorporate consideration of this material. Unfortunately, that never occurred.[12]

Comparing the 2010 MRIs to prior MRIs reveals significant worsening of Cacoperdo's condition. (490 with 998, demonstrating additional levels of problems in the lumbar spine, 498 with 100, demonstrating additional levels of problems in the thoracic spine, and 496 with 565, demonstrating additional levels of problems in the cervical spine). Hartford's argument falls flat.

## IV.   HARTFORD'S CONFLICT OF INTEREST

Cacoperdo's opposition addresses numerous conflict arguments, both with regard to the financial conflict of the claim and appeal personnel, and the case specific bias and procedural irregularities factually supported and harmonizing with Durakovic. The fact that other courts have found Hartford's structure to support minimizing the impact of its conflict of interest carries little, as here, the self serving declarations are muted by the testimony of Bruce Luddy, noting that the claim personnel are competing for a limited pool of bonus money, which is directly tied into the financial success of Hartford, and their contributions are specifically identified in determining the amount of their respective bonuses. Cacoperdo, Opp., p. 22-23. Thus, the conflict carries some weight, and/or can be considered as a tie-breaker in a close case. See Glenn, 128 S.Ct. at 2351.

Juan Mendez' deposition demonstrates that only a cursory review of Cacoperdo's claim was performed, and the record supports that he failed to afford Cacoperdo a full and fair review. See Cacoperdo Motion, Point III, and Cacoperdo Opp. Point I. Hartford's statement regarding Mr.

---

[12]   Hartford also argues the new medical records did not demonstrate additional restrictions (Def. Opp., p.5), but ignores that no Hartford utilized doctor reviewed the 2010 MRIs, and the doctors who treated and examined Cacoperdo, and did review these MRIs, found significant deficits and impairments in functionality. (502-04)(Dr. Kelman's examination findings, showing reduced muscle strength, significant range of motion deficits, antalgic gait, diminished reflexes, among other findings, and informed his conclusion that Cacoperdo was unable to work).

9

Mendez' inability to recall "each and every fact" from his determination is a gross mischaracterization of just how little he admitted to knowing about the claim. We again urge the Court to review the videotaped deposition to appreciate how little Mr. Mendez knew about the claim, and how disingenuous he appeared in answering questions about his knowledge and claim handling.

V. **A TRIAL SHOULD BE HELD IF ISSUES OF FACT REMAIN UNRESOLVED**

Hartford has opposed Cacoperdo's right to a trial, ignoring O'Hara v. Nat'l Union Fire Ins. Co., 642 F3d 110 (2d Cir. 2011) and Barber v. Sun Life, 2012 U.S. Dist. LEXIS 22607 (D. Conn. 2012)(summary judgment not appropriate where material issues of fact remain in dispute, regardless of standard of review). Instead, Hartford cites Magee v. Met Life, 632 F.Supp.2d 308, 321 (S.D.N.Y. 2009), claiming the District Court there rejected the right to a trial. In fact, that court found Met Life to have acted in an arbitrary and capricious manner, and remanded the case, a choice of remedy it had at its discretion, and awarded Magee attorneys fees. Once again, Hartford has taken to misrepresentations, distortion and vitriolic attack rather than squarely or honestly addressing issues.

## CONCLUSION

The combination of claim handling factors, considered by this Court under the Glenn/Levitian paradigm, compels a determination that Hartford abused its discretion. At a minimum, a trial should be held to determine whether Hartford abused its discretion.

Dated: Garden City, New York
      July 12, 2012

                              Respectfully submitted,

                              FRANKEL & NEWFIELD, P.C.
                              Jason Newfield (JN5529)
                              Attorneys for Plaintiff
                              585 Stewart Avenue, Suite 312
                              Garden City, NY 11530

## CERTIFICATE OF SERVICE

I, Jason Newfield, hereby certify that on July 12, 2012, a copy of the Plaintiff's Reply Memorandum of Law, Declaration of Jason Newfield with exhibit, and Proposed Findings of Fact was mailed via first class mail:

Michael Bernstein, Esq.
Sedgwick, LLP
125 Broad Street
New York, NY 10004-2400

The Memorandum of Law, Declaration with exhibit and Proposed Findings of Fact were filed via ECF.

_____
Jason Newfield