UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

MICHAEL CACOPERDO,                                    Civ. Act. No.: 10-civ-7847 (RPP)

                          Plaintiff,

          -against-                                   DOCUMENT
                                                      ELECTRONICALLY FILED

HARTFORD LIFE INSURANCE COMPANY,

                          Defendant.
-------------------------------------------------------------X


## DEFENDANT'S REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT


                          SEDGWICK LLP
                          Attorneys for Defendant
                          Hartford Life Insurance Company
                          125 Broad Street, 39th Floor
                          New York, New York 10004-2400
                          Telephone: (212) 422-0202
                          Facsimile:  (212) 422-0925
                          [Sedgwick File No. 02489-000101]


*Of Counsel*
    Michael H. Bernstein
    John T. Seybert
    Daniel M. Meier

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 1

    POINT I

    HARTFORD'S DENIAL OF CACOPERDO'S CLAIM FOR LTD BENEFITS
    WAS BASED ON SUBSTANTIAL EVIDENCE IN THE ADMINISTRATIVE RECORD .. 1

    POINT II

    CACOPERDO'S ARGUMENTS CONCERNING HARTFORD'S ALLEGED
    PROCEDURAL IRREGULARITIES ARE ALL WITHOUT MERIT ........................................ 3

    POINT III

    HARTFORD'S DETERMINATION WAS NOT INFLUENCED BY CONFLICT
    OF INTEREST ................................................................................................................... 8

CONCLUSION ....................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Abatie* v. *Alta Health & Life Ins. Co.*,
 458 F.3d 955 (9th Cir. 2006) ................................................................................................................. 10

*Alto* v. *Hartford Life Ins. Co.*,
 No. 11-1563-cv, 2012 WL 2125884 (2d Cir. June 13, 2012) ......................................................... 6, 10

*Billinger* v. *Bell Atl.*,
 240 F. Supp. 2d 274, 285 (S.D.N.Y. 2003)
 *aff'd,* 124 Fed. Appx. 669 (2d Cir. 2005) ............................................................................................ 3

*Donohoe* v. *Hartford Life Ins. Co.,*
 No. 6:10-CV-67, 2011 WL 940849 (N.D.N.Y. Mar. 18, 2011) .......................................................... 3

*Daniel* v. *UnumProvident Corp.*,
 No. CV–04–1073, 2010 WL 8292157 (E.D.N.Y. Oct. 27, 2010) ....................................................... 4

*Fortune* v. *Group Long Term Disability Plan For Employees of Keyspan Corp.*,
 637 F. Supp. 2d 132 (E.D.N.Y. 2009)
 *aff'd* 391 Fed. Appx. 74 (2d Cir. 2010) ............................................................................................... 6

*Gessling* v. *Group Long Term Disability Plan For Employees of Sprint/United Mgmt. Co.,*
 693 F. Supp. 2d 856 (S.D. Ind. 2010) ................................................................................................. 9

*Hobson* v. *Metropolitan Life Ins. Co.*,
 574 F.3d 75 (2d Cir. 2009) .......................................................................................................... 5, 9, 10

*In re Bear Stearns Companies, Inc. Securities, Derivative, and ERISA Litig.,*
 763 F. Supp. 2d 423 (S.D.N.Y. 2011) ................................................................................................. 9

*Kurth* v. *Hartford Life and Acc. Ins. Co.*,
 No. 2:10–cv–01229, 2012 WL 651684 (C.D. Cal. Feb. 27, 2012) .................................................... 10

*Levitian* v. *Sun Life and Health Ins. Co.*,
 No. 11-2063, 2012 WL 2299302 (2d Cir. June 19, 2012) .................................................................. 5

*Richard* v. *Fleet Financial Group Inc. LTD Employee Benefits Plan,*
 367 Fed. Appx. 230 (2d Cir. 2010) .................................................................................................... 10

*Testa* v. *Hartford Life Ins. Co.,*
 No. 11–974–cv, __ Fed. App. __, 2012 WL 1701332 (2d Cir. May 16, 2012) ................................. 5

*Young* v. *Hartford Life And Acc. Ins. Co.*,
 No. 09 Civ. 9811(RJH), 2011 WL 4430859 (S.D.N.Y. Sept. 23, 2011) ......................................... 6, 9

**Statutes**

Employee Retirement Income Security Act of 1974 ("ERISA") §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B)..... 1

29 C.F.R. §2560.503-1(h)(3)(iii) ................................................................................................................. 6

**Rules**

FED. R. EVID., Rule 201 .............................................................................................................................. 9

NY/961892v1

## PRELIMINARY STATEMENT

Defendant Hartford Life Insurance Company ("Hartford") submits this Memorandum of Law in reply to Plaintiff Michael Cacoperdo's ("Cacoperdo") opposition and in further support of its motion for summary judgment dismissing Cacoperdo's Complaint (the "Complaint") for benefits under the Employee Retirement Income Security Act of 1974 ("ERISA") §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B) on the ground that its decision to deny his claim for continuing long-term disability ("LTD") benefits under the Stop and Shop Supermarket Company Group Long Term Disability Plan (the "Plan") was not arbitrary and capricious.

## ARGUMENT
### POINT I
### HARTFORD'S DENIAL OF CACOPERDO'S CLAIM FOR LTD BENEFITS WAS BASED ON SUBSTANTIAL EVIDENCE IN THE ADMINISTRATIVE RECORD

Cacoperdo claimed entitlement to continuing LTD benefits because he was allegedly unable to perform sedentary work due to lumbar and cervical pain. (637).[1]  The administrative record reflects that Hartford terminated benefits following its review of his claim after he was captured on surveillance video performing rigorous physical activities inconsistent with his claimed restrictions and limitations.  The record also shows that after Hartford interviewed Cacoperdo about his functional abilities as depicted in the surveillance video, he admitted that all of these activities were consistent with his normal functional level, which included getting in and out of his car without difficulty, pushing a loaded shopping cart, lifting several grocery bags and large bottles of detergent with one hand, lifting a shopping cart's front end onto a parking lot median with one hand and doing yard work, including pushing a leaf blower around his yard.  (509-15). Consistent with these admissions, Cacoperdo's medical records documented that he had good muscle tone and strength in his upper and lower extremities, demonstrating consistent use.  (554).  Cacoperdo did not submit any objective proof of his claimed physical restrictions and limitations prior to Hartford's final

---

[1] The numbers in parentheses refer to the Bates Stamped pages starting with the prefix "CACOPERDO 000__," which are annexed to the Mendez Dec., as Exhibits "A" through "B" (Doc. No. 70).  The Court is also respectfully referred to Hartford's Statement of Material Facts dated June 1, 2012 (Doc. No. 72) for a detailed discussion of the facts.

decision terminate benefits.  Furthermore, when Hartford rendered its final adverse claim determination, it relied on no less than six pieces of substantial evidence in the record supporting its conclusion that Cacoperdo had the functional ability to perform full-time work in a sedentary occupation.

Cacoperdo's Opposition does not reference any objective evidence in the administrative record demonstrating functional limitations that preclude his ability to work at a sedentary job.  (Plaintiff's Memorandum of Law In Opposition To Defendant's Motion For Summary Judgment dated June 22, 2012, Doc. No. 78, pp. 9-14 ("Plt. Opp.")).  Instead, Cacoperdo launches general attacks on Hartford's decision-making on his claim that are not supported by the record.  For example, Cacoperdo argues that Hartford mischaracterized his medical records by focusing on his improvements but not on his subjective complaints.  (Plt. Opp., pp. 9-10; 20-21).  However, the "complaints" Cacoperdo references appear in his doctor's office notes from February 2007 to February 2008 – i.e., more than two years prior to the date Hartford terminated benefits on January 26, 2010.  (509-13).  Moreover, while Cacoperdo may have had consistent subjective complaints and diagnoses (none of which supported an inability to perform a sedentary position), his treating doctor's records documented his continued physical improvement throughout 2008 and 2009.  Specifically, Cacoperdo's treating physician Thomas Poole, M.D's. office notes reflect that Cacoperdo had good strength, tone and coordination in all muscle groups of the upper and lower extremities (680, 688); that his neuropathy was in good control and not worsening (679, 689); that his medications were effective and that he was not experiencing side effects (678, 680, 688).  Cacoperdo's treating chiropractor, Thomas Miceli, D.C's., records document that Cacoperdo had decreases in pain, advancements towards stabilization, symptomatic improvement in pain, and that chiropractic adjustments were helpful.  (87, 93-94, 575, 579, 591).  Finally, Cacoperdo's other treating physician, Jodi Scher-Pirro, M.D., noted in her records that Cacoperdo regularly engages in exercises and gardening.  (723, 728).

The court's attention is respectfully referred to Hartford's Memorandum of Law in support of its motion for summary judgment dated June 1, 2012, Doc No. 73, pp. 17-22 ("Def. MOL") and Defendant's Memorandum

Of Law In Opposition To Plaintiff's Motion For Summary Judgment dated June 22, 2012, Doc. No. 81, pp. 2-4

("Def. Opp.") for a complete discussion of the substantial evidence upon which Hartford relied in rendering its

final determination on Cacoperdo's claim and incorporates these arguments by reference herein.

## POINT II
## CACOPERDO'S ARGUMENTS CONCERNING HARTFORD'S ALLEGED PROCEDURAL IRREGULARITIES ARE ALL WITHOUT MERIT

The administrative record documents that Hartford provided Cacoperdo with numerous opportunities to

submit proof demonstrating his claimed continuing disability under the Plan at both the initial and appeal review

stages, but that he failed to do so.  Although no amount of argument can change this simple fact, Cacoperdo

baselessly argues that Hartford did not provide him with a full and fair review in violation of applicable Department

of Labor regulations.  These arguments are all without merit.  Moreover, it appears that Cacoperdo's opposition is a

deliberate attempt to distract the court's attention away from his failure to submit satisfactory proof of his

continuing disability by making a variety of unfounded attacks on Hartford's review process.

In this regard, Cacoperdo first argues that it was improper for Hartford to even consider the surveillance

video because it was allegedly "limited" and not reflective of his ability to work in a sedentary position.  (Plt. Opp.,

pp. 10-11).  This argument is belied by Cacoperdo himself, who after viewing the video depicting him engaging in

activities requiring higher levels of physical exertion than a sedentary occupation, agreed that it depicted his

"normal/average level of function." (213, 517, 534).   Although Cacoperdo attempts to distinguish the long-line of

cases approving of the use of surveillance in disability cases such as this one  (Plt. Opp., p. 17), it is well-settled that

courts find surveillance video depicting activity that is inconsistent with the plaintiff's subjective complaints and

claimed limitations to be persuasive evidence in support of a claim denial. *Cf. Donohoe* v. *Hartford Life Ins. Co.,* No.

6:10-CV-67, 2011 WL 940849 (N.D.N.Y. Mar. 18, 2011); *see also Billinger* v. *Bell Atl.,* 240 F. Supp. 2d 274, 285

(S.D.N.Y. 2003) *aff'd,* 124 Fed. Appx. 669 (2d Cir. 2005).

Cacoperdo next argues that the report of his functionality, as observed by the Hartford investigator during

their face-to-face interview, was insufficient evidence on which to base a denial of benefits.  (Plt. Opp., pp. 11-12).

3

Cacoperdo argues that Hartford should have placed more weight on the signs of discomfort he claims to have shown during the interview.  But the administrative record does not reflect that Cacoperdo demonstrated any apparent discomfort when he was performing the more rigorous physical acts seen on the surveillance and he admitted that all of those activities are within his normal level of function, which is above the level of functionality required for a sedentary occupation.  (534).

Cacoperdo also attempts to downplay the significance of his other admitted physical activities not captured on video, but does not offer any legitimate basis to discount these facts.  In this regard, Cacoperdo's ability to travel by plane to Arizona shows his ability to sit for an extended period of time.  (044).  His desire to take real estate classes, (*id.*) further reflects his own understanding of his physical ability to sit for the length of these classes and his demonstrated ability to sit through several foster parent classes (*id.*) shows that he actually had the functional ability to sit and work for periods of time, which is consistent with the physical demands of a sedentary job. Cacoperdo also admitted that his daily activities include feeding his dog, walking to the curb to get his paper, picking tomatoes in his garden, driving his nieces to school, making lunch, walking at the mall, shopping and going to church.  (531).  While these examples of his physical ability are not, on their own, dispositive of Cacoperdo's functional abilities, they are notably consistent with the activities depicted on the surveillance and his admitted ability to perform those activities.  It was therefore appropriate for Hartford to consider all of this evidence in determining Cacoperdo's claim for continuing LTD benefits.  Furthermore, contrary to Cacoperdo's attempts to distinguish *Daniel* v. *UnumProvident Corp.*, No. CV–04–1073, 2010 WL 8292157 (E.D.N.Y. Oct. 27, 2010), this case is completely on point with the matter *sub judice*.  In *Daniel*, the claim administrator noted inconsistencies between the plaintiff's claimed restrictions and his documented daily activities.  *Id.* at *5.  Here, Cacoperdo's subjective complaints of pain and inability to perform a sedentary occupation are similarly inconsistent with a number of daily activities he admittedly performs, which raises the index of suspicion concerning the veracity of his subjective complaints.  (Def. Opp., pp. 7-8).

Cacoperdo next inaccurately argues that Hartford relied on an outdated Employability Analysis Report

("EAR"). (Plt. Opp., p. 12). However, as explained in Hartford's opposition to his motion, Cacoperdo never argued on administrative appeal that the EAR was outdated, nor did he submit any evidence demonstrating that the restrictions listed in the EAR were invalid. Moreover, Cacoperdo never submitted his own EAR to contradict the EAR findings he now challenges. In this regard, Cacoperdo's reliance on *Levitian* v. *Sun Life and Health Ins. Co.*, No. 11-2063, 2012 WL 2299302 (2d Cir. June 19, 2012), is misplaced because the vocational report in that case only found one occupation that plaintiff was able to perform and made assumptions about the physical demands of that job without explaining the basis for those assumptions. Here, the EAR identified thirty-two different occupations that were appropriate for Cacoperdo's education, training and experience, met the Plan's wage requirement and also had sedentary physical demands consistent with Cacoperdo's physical abilities. (539). Indeed, the EAR referenced restrictions and limitations recommended by Leonid Topper, M.D. and Howard Choi, M.D., who had already reviewed Cacoperdo's treating physicians' recommendations and taken them into account. (538, 552-55, 557-58). Notably, Judith Esman, M.D., a board certified independent medical peer reviewer, who reviewed Cacoperdo's medical records on administrative appeal, did not identify any greater physical restrictions than those identified by Drs. Topper and Choi, whose opinions informed the EAR. (426-29, 442-54). Accordingly, the EAR properly accounted for Cacoperdo's restrictions and limitations and was therefore, not "outdated." (Def. Opp, pp. 4-5).

Cacoperdo next incorrectly argues that Hartford was required to give greater weight to his treating physicians' opinions than the opinions of the three independent medical peer record review consultants who reviewed his medical records. (Plt. Opp., pp. 12-14). This argument was specifically rejected by the Second Circuit in *Hobson* v. *Metropolitan Life Ins. Co.*, 574 F.3d 75, 89 (2d Cir. 2009). (*See* also Def. Opp. at pages 16-17).

Cacoperdo's attempt to discredit peer review consultant Dr. Topper's opinions by attacking his credentials is similarly without merit. (Plt. Opp., pp. 13-14). As explained in Hartford's Opposition, the very same argument on this point that Cacoperdo advances here was recently rejected by the Second Circuit. *See Testa* v. *Hartford Life Ins. Co.*, No. 11–974–cv, __ Fed. App. __, 2012 WL 1701332, *2, *3 (2d Cir. May 16, 2012). (Def. Opp., pp. 11-12).

*See also Young* v. *Hartford Life And Acc. Ins. Co.*, No. 09 Civ. 9811(RJH), 2011 WL 4430859, *12 (S.D.N.Y. Sept. 23, 2011). Moreover, Cacoperdo has not offered any convincing medical reason to call into doubt Dr. Topper's opinions concerning his physical functionality. *See Fortune* v. *Group Long Term Disability Plan For Employees of Keyspan Corp.*, 637 F. Supp. 2d 132, 143 (E.D.N.Y. 2009) *aff'd* 391 Fed. Appx. 74 (2d Cir. 2010). And even without Dr. Topper's report there was more than sufficient substantial evidence in the record on which Hartford properly relied to deny Cacoperdo's claim. *See Alto* v. *Hartford Life Ins. Co.*, No. 11-1563-cv, 2012 WL 2125884, at *2 (2d Cir. June 13, 2012) (Summary Order).

Cacoperdo also baselessly argues that Dr. Esman's peer review opinion was "biased, flawed and incomplete" (Plt. Opp., p. 14), but offers no basis to support this argument. (*See* Def. Opp., pp. 12-14). The administrative record reflects that Dr. Esman reviewed all of the medical records provided, communicated with Samuel Kelman, M.D. (a physician retained by Cacoperdo to perform a medical examination) and Thomas Micelli, D.C. (Cacoperdo's treating chiropractor). (442, 482). Cacoperdo argues that because Dr. Esman did not specifically list his 2010 MRIs in her report, she must not have reviewed them. (Plt. Opp., p. 15). But Dr. Esman did not list each and every item of medical evidence that she reviewed in her thirteen-page report, nor was she required to do so. (442-54); *see* 29 C.F.R. §2560.503-1(h)(3)(iii). Notably, although given the opportunity to take discovery from Hartford on this issue, Cacoperdo did not obtain any evidence to support his contentions. Specifically, on April 4, 2012, Cacoperdo's counsel deposed Juan Mendez, the Hartford Appeals Specialist who handled Cacoperdo's appeal and did not obtain any testimony to support his baseless conjecture about the records sent to Dr. Esman. Conversely, the administrative record documents that Mr. Mendez explicitly noted his receipt of the 2010 MRI reports and discussed them in his claim notes before he sent the records for the peer review that was eventually assigned to Dr. Esman. (195-96). The administrative record further documents that Dr. Esman also spoke with Dr. Kelman on April 20, 2010 concerning his evaluation and discussed with him Cacoperdo's recent MRIs. (451-52). It is also worth noting that while Cacoperdo places significant weight on the 2010 MRI reports because he inaccurately asserts that they were not considered by Hartford, no doctor - not even

6

Cacoperdo's treating doctors - ever referenced these MRI reports in formulating their opinions concerning his functional ability to perform sedentary work. In fact, Dr. Kelman recommended that Cacoperdo obtain the MRI and X-rays after he had already examined Cacoperdo and issued his opinion. (504). Finally, Cacoperdo has not shown that these reports are material. Indeed, they show nothing more than Cacoperdo's disc pathology and diagnoses, which are not disputed. The films do not demonstrate that Cacoperdo could not perform sedentary work, which was the basis for Hartford's decision to terminate benefits.

Cacoperdo also baselessly criticizes Dr. Esman for not speaking to his treating physician, Dr. Poole, before issuing her report. This criticism is particularly inappropriate since the record demonstrates that Dr. Poole refused to cooperate with Dr. Esman's efforts to speak to her. Specifically, the record documents that Dr. Esman made several attempts to speak with Dr. Poole, but that Dr. Poole's office stated that "Dr. Poole is requesting written permission from the claimant prior to speaking with Dr. Esman." (427). Although, Cacoperdo inaccurately accuses Hartford of misrepresenting the record on this point, arguing that Hartford had signed authorizations to allow Dr. Esman to speak with Dr. Poole but that it did not provide them to Dr. Poole as a "pre-text" to cover up Dr. Esman's failure to call Dr. Poole (Plt. MOL, p. 18), the administrative record shows that *Mr. Mendez sent a letter and authorization to Dr. Poole on April 1, 2010* requesting that she speak with Dr. Esman. (279). Thus, Dr. Poole had the authorization, but chose not to participate in the requested peer-to-peer discussion.

Cacoperdo further challenges Dr. Esman's report because she allegedly "misrepresented" Dr. Miceli's opinions concerning his physical abilities as being based on subjective findings. (Plt. Opp., p. 20). Again, Cacoperdo misstates the record, which shows that Dr. Esman explained in her report that while Dr. Miceli referenced several objective findings (which Dr. Esman also noted in her report), his opinions concerning Cacoperdo's restrictions and limitations were "based on subjective findings that are subjective complaints." (428). Cacoperdo also repeatedly mischaracterizes Dr. Esman's opinions concerning his functional abilities for allegedly refusing to consider "non-objective evidence" of his claimed disability. (Plt. Opp., pp. 7, 14, 16, 20). Once again, this argument is inaccurate and belied by Dr. Esman's report itself which expressly references "[Cacoperdo's]

reports of chronic pain" to find that he was restricted to sedentary to light work.  (452).  (*See* also 442; 448; 452; 481; Def. Opp., pp. 12-14, 17).

Cacoperdo also incorrectly asserts that Hartford must accept his subjective complaints as the basis for his disability claim, but provides no legal support for his argument.  (Plt. MOL, pp. 14-18).  As discussed in Hartford opposition, most courts have explicitly rejected this argument.  (Def. Opp., pp. 17-18).

Cacoperdo continues to argue that the four (4) year old medical report of Phillip Marion, M.D., who opined that Cacoperdo had previously provided objective clinical findings to support his claim of limited functional capacity, settled this issue forever.  (Plt. Opp., p. 15).  However, the fact that Dr. Marion's report was more than four years old at the time Hartford denied his claim for continuing LTD benefits, in and of itself, reflects that it was out of date and not based on the most current information at that time.  (268-69; 448; *Compare* 1130 & 1133 *with* 496 & 498).  Manifestly, Dr. Marion did not consider Cacoperdo's more recent medical records or the surveillance video since these materials were not available when he wrote his report.  As such Hartford was not bound by Dr. Marion's report, particularly where later proof shows that the opinions expressed in that report were not consistent with recent developments.  (*See* Def. Opp., p. 10).

## POINT III
## HARTFORD'S DETERMINATION WAS NOT
## INFLUENCED BY CONFLICT OF INTEREST

Cacoperdo alleges that a variety of procedural violations were committed by Hartford in its review of his claim, which he asserts is proof that Hartford's decision-making was actually affected by its structural conflict of interest.  This argument is utterly without merit, and as discussed above and in Defendant's Opposition, none of the circumstances that Cacoperdo claims to constitute procedural violations are actually evidence of such.  Indeed, in every instance of a purported procedural irregularity cited by Cacoperdo, Hartford's conduct was reasonable and appropriate.  (*See* Def's Opp., pp. 4-14, POINT II, *supra*).  Therefore, the Court should not give the "conflict of interest" factor any weight.

In this regard, Cacoperdo challenges the affirmative proof offered by Hartford to demonstrate the active

steps it takes to reduce the influence of a conflict of interest. None of these challenges, however, are valid. Cacoperdo first inaccurately contends that Bruce Luddy's deposition testimony is inconsistent with the statements in his Declaration in support of Hartford's motion for summary judgment. (Plt. Opp., pp. 21-23). Specifically, Cacoperdo suggests that Mr. Luddy's testimony reflects that Hartford pays bonuses to its claims and appeal personnel based on the number of claims they deny. (Plt. Opp., p. 22-23). This scurrilous assertion is not only false, but also a blatant mischaracterization of Mr. Luddy's actual testimony. Mr. Luddy testified that bonuses for claims personnel are affected by their performance evaluations, which he stated are *not* based on the number of claims denied. (Declaration of Jason Newfield dated June 22, 2012, Doc. No. 79, Ex. "C", T. 38:18-39:4; Declaration of Bruce Luddy dated May 29, 2012, Doc. No. 69 ("Luddy Dec.") ¶¶ 8-9). Cacoperdo's baseless speculation and innuendo concerning Hartford employees' purported financial conflict are insufficient as a matter of law to support an argument that the Investigative Specialist and Appeal Specialist involved in this claim review had a financial interest in denying this particular claim. *See Hobson*, 574 F.3d at 83; *Young*, 2011 WL 4430859, at *11.

Cacoperdo attaches to his motion a transcript of Hartford's 2009 quarterly earnings conference call and asks the court to take judicial notice of it in support of his baseless conflict arguments. (Plt's Opp., p. 22 n. 13). However, there is nothing relevant for the court to consider in this transcript and there is no basis for the court to consider this extra-record evidence. Indeed, the court may only take judicial notice pursuant to Rule 201, FED. R. EVID., of the fact that this conference call took place, but not the truth of the matters asserted in the transcript. *See In re Bear Stearns Companies, Inc. Securities, Derivative, and ERISA Litig.,* 763 F. Supp. 2d 423, 582 (S.D.N.Y. 2011). Moreover, this unauthenticated transcript from the website "Seeking Alpha" is not the sort of "source[ ]whose accuracy cannot reasonably be questioned," under Rule 201(b), FED. R. EVID., leaving serious questions about its authenticity. Lastly, the earnings discussed in the transcript do not reflect that Hartford's denial of Cacoperdo's claim was motivated by an actual conflict of interest. *See Gessling* v. *Group Long Term Disability Plan For Employees of Sprint/United Mgmt. Co.,* 693 F. Supp. 2d 856, 871 (S.D. Ind. 2010). Neither Cacoperdo's nor any other claimant's claim is discussed in the transcript. As such, this irrelevant document should be disregarded by the court. *See Hobson*, 574

9

F.3d at 83.

Cacoperdo's reference to *Kurth* v. *Hartford Life and Acc. Ins. Co.*, No. 2:10–cv–01229, 2012 WL 651684 (C.D. Cal. Feb. 27, 2012) to demonstrate Hartford's purported conflict of interest is also meritless. (Plt. Opp., p. 23). In *Kurth*, the Court ruled that Mr. Luddy had testified at his deposition in that case that Hartford's claim reviewers have no contact with Hartford's financial department, as Mr. Luddy also stated in his Declaration in this case. (*See* Luddy Dec., ¶14). Nonetheless, the district court in *Kurth* found that a certain "degree of skepticism"[2] would be appropriate in that case because of an unidentified monetary amount written in the margins of a document in the plaintiff's administrative record. *Kurth*, 2012 WL 651684, *7. Thus, the Court in *Kurth* did not criticize Mr. Luddy or find his testimony not credible. Rather, it made a specific ruling on the facts of that specific case, none of which exist in Cacoperdo's claim file. *See Hobson*, 574 F.3d at 83 (requiring that Cacoperdo demonstrate that conflict considerations actually influenced Hartford's decision-making).

Cacoperdo again mischaracterizes testimony by arguing that Juan Mendez's statements at his deposition that he does not recall a specific case in which he rejected a peer review physician's opinion actually means that it has never happened. (Plt. Opp., pp. 23-24). Regardless of this blatant mischaracterization of testimony, the point is ultimately irrelevant here where three separate peer review consultants independently reviewed Cacoperdo's medical records and separately concluded that he had the residual functional ability to perform sedentary work.

Finally, this Court need not even consider the conflict of interest factor if it determines that substantial evidence in the administrative record exists to support Hartford's determination. *See Richard* v. *Fleet Financial Group Inc. LTD Employee Benefits Plan*, 367 Fed. Appx. 230, 233 (2d Cir. 2010); *Alto*, 2012 WL 2125884, at *1.

## CONCLUSION

For the foregoing reasons and those set forth in Hartford's initial Memorandum of Law in support of this motion, as well as the reasons set forth in Hartford's opposition to Cacoperdo's motion for summary judgment, this Court should grant Hartford's motion for summary judgment, dismissing Cacoperdo's Complaint.

---

[2] *See Abatie* v. *Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006). No other Circuit applies this "degree of skepticism" standard.

NY/961892v1

Dated:  New York, New York
          July 12, 2012

                                          Respectfully Submitted,


                                          __s/_____
                                          Michael H. Bernstein (MB 0579)
                                          John T. Seybert (JS 5014)
                                          Daniel M. Meier (DM 2833)
                                          SEDGWICK LLP
                                          Attorneys for Defendant
                                          *Hartford Life Insurance Company*

## CERTIFICATE OF SERVICE

I, DANIEL M. MEIER, hereby certify and affirm that a true and correct copy of the attached

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION**

**FOR SUMMARY JUDGMENT** was served via ECF and regular mail on this 12th day of July, 2012, upon the

following:

Jason A. Newfield, Esq.
Frankel & Newfield, P.C.
585 Stewart Avenue - Suite 312
Garden City, New York 11530
*Attorneys for Plaintiff*


s/_____
DANIEL M. MEIER (DM 2833)


Dated:      New York, New York
            July 12, 2012